Notwithstanding the terms contained in this Order, the Term Sheet or any attached materials, the relief provide by the Court is interim and subject to final approval.

Eddward P. Ballinger Jr., Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | **CASE NO.:** |
| SNTech Inc. a Delaware corporation | **Chapter 11 Proceeding** |
| Debtor. | |
| ☒ Affects this Debtor. | |

## INTERIM ORDER (1) AUTHORIZING DEBTOR TO OBTAIN POST-PETITION FINANCING, (2) GRANTING LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE, (3) AUTHORIZING USE OF CASH COLLATERAL, AND (4) SETTING AND PRESCRIBING THE FORM AND MANNER OF NOTICE FOR A FINAL HEARING

The Court has considered and acted upon the certain *Debtor's Emergency Motion Seeking Interim and Final Orders: (1) Authorizing Debtor to Obtain Post-Petition Financing, (2) Granting Liens and Superpriority Administrative Expense; (3) Authorizing Use of Cash Collateral, and (4) Setting and Prescribing the Form and Manner of Notice for a Final Hearing* (the "Motion")[1] filed on December 4, 2014 by SNTech, Inc. (the "Debtor") in the above-captioned chapter 11 bankruptcy case (the "Chapter 11 Case"). In the Motion, the Debtor requested authorization to obtain financing from the Lender, to grant the Lender security interests and liens under Sections 364(c) and (d), and to accord superpriority claim status in favor of the Lender under Sections 364(c) and 507(b) of the Bankruptcy Code, among other things.

Upon the interim hearing ("Interim Hearing") held before this Court on December 10-11, 2014, after due deliberation and consideration and sufficient cause appearing therefore;

---

[1] All of the capitalized terms used in this Interim Order will have the meanings ascribed to them in the Motion or the Term Sheet (as defined below), unless otherwise indicated.

1

**THE COURT FINDS AND CONCLUDES:**

A.     <u>Bankruptcy Chapter 11 Case</u>.  On the Petition Date, the Debtor filed voluntary petition for relief under chapter 11 of the Bankruptcy Code.  Pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code, the Debtor continues to operate its business and manage its properties, affairs and assets as a debtor-in-possession.

B.     <u>Jurisdiction and Venue</u>.  This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.     <u>Notice</u>.  Notice of the Motion, the relief requested therein and the Interim Hearing was served by the Debtor on its twenty (20) largest unsecured creditors, MERS, CapFlow, other junior secured creditors, and the Office of the United States Trustee for the District of Arizona (the "<u>U.S. Trustee</u>").  Under the circumstances, the proper, timely, adequate, and sufficient notice given by the Debtor of the Motion, the relief requested therein and the Interim Hearing was reasonable and appropriate under, and complies with, the requirements of due process, Bankruptcy Rule 4001(b), and the rules of this Court such that no other or further notice of the foregoing or of the entry of this Order is required, except as provided herein.

D.     <u>The DIP Credit Facility</u>.  The Debtor, the Lender, and the U.S. Trustee engaged in arm's length negotiations and in good faith with respect to the terms and conditions of the DIP Credit Facility, all parties being represented by separate counsel.  These negotiations culminated in an agreement upon the DIP Credit Facility on an interim basis (the "<u>Interim DIP Credit Facility</u>").  The terms set forth in the term sheet entitled "GENERAL TERM SHEET FOR POST PETITION, DEBTOR-IN-POSSESSION FINANCING" (the "<u>Term Sheet</u>"), a copy of which is

attached as **Exhibit A**, among Lender and the Debtor (attached hereto and incorporated by reference herein) are fair, reasonable, and in the best interests of the estates and their creditors.

E.     The Approved Budget.   The Debtor and Lender have agreed upon the Full Budget, a copy of which is attached as **Exhibit B**, subject to the qualifications below and in the Term Sheet.   The Debtor, Lender, the U.S. Trustee, and CapFlow have agreed to the expenses and funding shown on the Full Budget through the week ending January 16, 2015 (the "Approved Budget").   Expenses and funding shown on the Full Budget after the week ending January 16, 2015 are not yet approved.

F.     The Debtor's Needs for the DIP Credit Facility.

(a)     Good cause has been shown for the entry of this Order.   The Debtor's use of the funds advanced pursuant to this Order, the DIP Credit Facility, and the Approved Budget was and is immediate and critical.   Entry of this Order will minimize any diminution in the value of the bankruptcy estate, and is in the best interests of the Debtor, its creditors, and the bankruptcy estate.   The terms of the financing authorized hereby are fair and reasonable, reflect the Debtor's exercise of prudent business judgment, and are supported by reasonably equivalent value and fair consideration. The Debtor and its estates would suffer immediate and irreparable harm unless the Court authorizes the Debtor:

- to obtain emergency funding from the Lender, on superpriority basis, up to $301,628.00, pursuant to the Approved Budget, prior to a final hearing on the Motion to fund critical payroll, rent and other operating expenses of the Debtor and its Korean and Thailand subsidiaries (SNTech Co., Ltd. and Thai SNTech Co., Ltd. respectively);

3

- to obtain emergency funding from the Lender, without a superpriority lien attaching to any of the Debtor's unencumbered property, in the amount $171,550.00, to purchase certain assets of SNTech Co., Ltd. and Thai SNTech Co., Ltd. to protect those assets from seizure and a diminuition of the going concern value of the Debtor's assets. The proceeds from this purchase will be used by the Debtor to fund payroll in the form of severance and back pay as required by Korean and Thai law, thereby, avoiding further liability to the bankruptcy estate. The availability of this $171,550.00 is subject to Lender's specific prior authorization; and

- to pay Lender's facility fee for the interim financing, in the amount of $13,781.89 (the "Interim Facility Fee"), as part of the Approved Budget for the Interim Period, but with such payment being subject to review by the Committee (defined below) during the Look Back Period (defined below).

(b)     The Debtor has shown that its ability to preserve its estate will be severely impaired unless immediate payments are made to its U.S. employees and to the employees of its subsidiaries located in Thailand and Korea, and to its Korean subsidiary's landlord, in the amount shown on the Approved Budget.

(c)     The Debtor is unable to obtain unsecured credit allowable under Bankruptcy Code 503(b)(1) as an administrative expense. The Debtor is also unable to obtain secured credit, allowable under Bankruptcy Code 364(c)(2), (c)(3), or under 364 (d) except under the terms and conditions provided in this Order. No parties were willing to provide financing in the form of unsecured

credit allowable under section 503(b)(1), as an administrative expense under section 364(a) or (b) of the Bankruptcy Code, or solely in exchange for the grant of a superpriority administrative expense claim pursuant to section 364(c)(1) of the Bankruptcy Code.

(d)     Based upon the record presented at the Interim Hearing, the Court finds that the Term Sheet providing for the Interim DIP Credit Facility was negotiated in good faith and at arm's length between the Debtor, the Lender, and the U.S. Trustee, and the DIP Obligations incurred thereunder shall be deemed to have been created and made in good faith within the meaning of Section 364(e) of the Bankruptcy Code. The Lender is specifically found to be in "good faith" within the meaning of Section 364(e) with respect to all extensions of credit, and any and all DIP Obligations.

(e)     The DIP Credit Facility as provided in the Term Sheet with the Lender is the best financing option available to the Debtor because, among other things, the Term Sheet permits the Debtor to secure the postpetition financing required for its operating expenses and other expenses associated with the sale of the Debtor's assets, under the best terms available (and better than under the prepetition Credit Agreement), and will enable the Debtor to preserve the enterprise value of its business and maximize the value of its estate for all stakeholders.

(f)     The Court concludes that the entry of this Order is in the best interests of the Debtor's bankruptcy estate and its creditors as its implementation will,

5

among other things, sustain the operation and value of the Debtor's bankruptcy estate.

G.    <u>Cash Collateral</u>. Subject to compliance with the conditions of this Interim Order, the Debtor is permitted to use cash which may constitute Cash Collateral during the period of and in the amounts set forth in the Approved Budget and in accordance herewith. MERS, CapFlow, and Roland consent to the Debtors' use of Cash Collateral, and notwithstanding their consent, MERS, CapFlow, Roland, and Sail are adequately protected through the preservation of the value of the Debtor's estate with respect to the funds advanced under this Interim Order.

**Accordingly it is hereby ORDERED, ADJUDGED AND DECREED that:**

1.    <u>Motion Granted</u>. The Motion is hereby granted and the Term Sheet is approved on an interim basis as set forth herein, and remains subject to the objection periods stated below, except for the relief specifically granted herein on a final basis. To the extent there are inconsistencies between the Interim Order and the Term Sheet, the terms and conditions of the Interim Order shall control.

2.    <u>Notice</u>. Notice of the Motion, and the transactions contemplated thereby, has been provided to all parties entitled thereto and such notice was appropriate under the circumstances, and no other or further notice of the Motion, and the transactions contemplated thereby, is or shall be required, except as otherwise provided by this Order.

3.    <u>DIP Credit Facility</u>. The Debtor is authorized pursuant to this Interim Order to borrow and spend in accordance with the Approved Budget $475,000.00, pursuant to the Term Sheet and DIP Loan Documents through January 16, 2015, and to pay all fees and charges required under the Term Sheet and/or DIP Loan Documents, as reflected in the Approved Budget. With regard to items shown as "Expenses not Subject to Super-Priority Status on

6

Interim Order" on Exhibit B, Lender is not obligated to make funds available for those expenses unless and until it decides in its sole discretion that it is in Lender's best interest to do so. Further, Lender has no obligation to continue to advance funds under the DIP Credit Facility if any of the following occurs: (i) its total lending to Borrower (including its subsidiaries), including interest, Lender's attorneys' fees, and expenses, since November 1, 2014, meets or exceeds $1,350,000.00, unless all such amounts are given Superpriority status by the Bankruptcy Court; (ii) its total lending to Borrower (including its subsidiaries), including Lender's attorneys' fees and expenses (but not interest) since November 1, 2014, meets or exceeds $1,475,000.00, which amount may be reduced by any funds paid to a subsidiary of the Borrower for the purchase of assets the subsidiary represents that it owns; (iii) the occurrence of any other event or condition that allows Lender to cease advancing funds under the DIP Credit Facility as stated herein or in the Term Sheet.

4. <u>DIP Loan Documents</u>. The Lender's obligation to fund any of the DIP Credit Facility is conditioned upon and subject to execution of final, definitive DIP Loan Documents, each in a form acceptable to the Lender in its sole discretion, and satisfaction of all terms and conditions set forth in the definitive DIP Loan Documents, provided however, Lender is authorized but not obligated to advance to the Debtor up to $310,000.00 prior to the execution of definitive DIP Loan Documents for (a) inter-company loan(s) by the Debtor to its subsidiaries for the payment of their rent and payroll and (b) payment of the operating expenses of the Debtor, in such amounts set forth at applicable line items for the periods December 12, 2014 - January 16, 2015, as shown on the Approved Budget portion of Exhibit B. Any and all advances described in subparagraph (a) and (b) constitute DIP Obligations subject to this Order, and are entitled to all rights, Liens, Claims, Superpriority Claims, and remedies set forth herein, and shall

7

be governed by the Term Sheet until all DIP Obligations shall have been paid and satisfied in full. The Debtor may borrow and spend, and the Lender may advance in its discretion, the amounts set forth on the line items "Expenses Not Subject to Superpriority Status: 'Korea – Purchase of Assets' and 'Thailand – Purchase of Assets'" of Exhibit B for the purchase by the Debtor of assets of the Debtor's subsidiaries but such amounts shall not constitute Superpriority claims against the estate under this Interim Order, reserving to Lender the right to seek approval of such amounts as Superpriority claims at the final hearing on the DIP Motion, and reserving to Lender full discretion on making such advances or dealing separately with the Debtor's subsidiaries.

5.      Approval and Binding Effect.  With respect to the amounts advanced under the Approved Budget described in Paragraph 4 (a) and (b) (i.e., for inter-company loan(s) by the Debtor to its subsidiaries for the payment of their rent and payroll and payment of the operating expenses of the Debtor in the  amounts set forth at  applicable line items for the periods December 12, 2014 - January 16, 2015 of Exhibit B) such amounts are deemed to be reasonable and necessary  and the Liens, Claims, and Superpriority Claims granted under this Order to secure such funds advanced by Lender in accordance with the Approved Budget, this Order is final in all respects, not subject to further challenge or review, and fully protected by Section 364(e).  Notwithstanding the forgoing sentence: (a) any funds advanced by Lender to allow the Debtor to purchase assets from one of its subsidiaries, prior to entry of the Final Order, will not be afforded Superpriority status under Section 364(c)(1) of the Bankruptcy Code unless and until approved at the Final Hearing, and (b) the Interim Facility Fee is subject to review by the Committee during the Look Back Period.  Except as otherwise stated herein, the remainder of the Term Sheet and the DIP Loan Documents provided thereunder are approved in all respects on an

8

interim basis. All interim relief granted by this Order becomes final thirty (30) days from the entry of this Order unless objected to as provided below.

6. <u>Look Back Period</u>. The Official Committee of Unsecured Creditors (the "<u>Committee</u>") shall have through January 16, 2015, to object to the interim relief granted pursuant to this Order. This Order shall not be subject to objection by the Committee for purposes of the reasonableness or necessity of the amounts advanced under the Approved Budget described in Paragraph 4 (a) and (b) (i.e., for loan(s) by the Debtor to its subsidiaries for the payment of their rent and payroll and payment of the operating expenses of the Debtor in the amounts set forth at applicable line items for the periods December 12, 2014 - January 16, 2015 of the Full Budget), except for the Interim Facility Fee. To that extent, the Liens, Claims, and Superpriority Claims securing such amounts, are not subject to further challenge or review and shall be treated in accordance with the terms of this Interim Order and are fully protected by Section 364(e).

7. <u>Obligations of Debtor; Recoupment/Setoff</u>. The Term Sheet, the DIP Loan Documents and the DIP Credit Facility Order shall constitute the valid and binding obligations of the Debtor, enforceable against the Debtor in accordance with the terms of the Term Sheet, the DIP Loan Documents and the DIP Credit Facility Order. No obligation, payment, transfer or grant of security under the Term Sheet, the DIP Loan Documents or the DIP Credit Facility Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable law (including without limitation, under section 502(d) of the Bankruptcy Code), or subject to any defense, reduction, setoff, recoupment, counterclaim or subordination.

8. <u>Repayment of DIP Obligations</u>. On the Maturity Date, the Debtor shall repay any and all outstanding all DIP Obligations in full and in cash without defense, reduction, setoff,

recoupment, counterclaim, subordination or other reduction. The Debtor may not repay the DIP Obligations prior to the Maturity Date without Lender's consent or approval from this Court.

9. <u>Authorization of Financing</u>. Subject to the terms and conditions of this Order, the following actions by the Debtor are authorized and/or ratified: (a) execution of the Term Sheet and the DIP Loan Documents; (b) the borrowing and receipt of $310,000.00 under the DIP Credit Facility to be used solely in accordance with the Approved Budget; and (c) satisfaction of all conditions precedent and performance of all obligations under this Order, the Term Sheet, the DIP Loan Documents and the Approved Budget. Notwithstanding anything to the contrary in this Order, in no event shall the Lender be obligated to make any advances under the Term Sheet or the DIP Loan Documents if at the time of a requested advance an Event of Default or a default by the Debtor under this Order exists, or if such advance is for items or expenditures not included in the Approved Budget. Funds advanced under this Interim Order shall be used for (a) inter-company loan(s) by the Debtor to its subsidiaries for the payment of their rent and payroll and (b) payment of the operating expenses of the Debtor, in such amounts set forth at applicable line items for the periods December 12, 2014- January 16, 2015 of Exhibit B in accordance with the Approved Budget, and to pay Lender's reasonable legal fees and expenses. The Lender shall not have any obligation or responsibility to monitor the Debtor's use of proceeds of the DIP Credit Facility and may, but is not required to, rely on the Debtor's representations that the amount of any advances requested by the Debtor, and the use thereof, are in accordance with the requirements of this Order, the Term Sheet, and the DIP Loan Documents. The Debtor shall provide to the U.S. Trustee, the Lender and any Committee, and if required file with the Court, a declaration detailing the expenditures of all funds authorized to be spent under this Interim Order

10.     Interim Nature.  If a Final Order is not entered for any reason, this Interim Order will remain in full force and effect and nothing shall affect the rights of the Lender under the Term Sheet or the DIP Loan Documents, or the rights of the Lender under this Order, and all such rights and remedies of the Lender under the Term Sheet, DIP Loan Documents, and this Order shall remain in full force and effect and (i) the Liens and the Superpriority Claims granted to and conferred upon the Lender shall continue in full force and effect and shall maintain their priorities as provided in this Order until all DIP Obligations shall have been paid and satisfied in full and the Liens and the Superpriority Claims shall remain binding on the Debtor, the estate of the Debtor, any Chapter 7 or 11 Trustee appointed in the Chapter 11 Case, and all interested parties; and (ii) this Court shall retain jurisdiction, notwithstanding the failure to approve the final order, for the purpose of enforcing the Term Sheet, the DIP Loan Documents, this Order, the Liens and the Superpriority Claims referred to herein.

11.     Collateral for DIP Obligations.

(a)  Liens

Subject to the Carve Out (defined below), pursuant to Sections 364(c) and (d), the DIP Obligations shall be secured by automatically perfected first priority, priming, and post-petition security interests in and liens ("Liens") on all of the properties and assets of the Debtor, real and personal, including, but not limited to, the "Collateral" and all other assets described in the DIP Loan Documents, the DIP Credit Facility Order and hereafter acquired real and personal property of the Debtor, and its bankruptcy estate (including claims and causes of action), whether acquired prior to or after the Petition Date, whether now owned and existing or hereafter acquired, created or arising, and all products and proceeds thereof (including without limitation, claims of the Debtor against third parties for loss or damage to such property), including all accessions thereto, substitutions and replacements thereof, and wherever located, *except any and all actions under sections 544, 545, 547, 548, 550, 551, or 553 of the Bankruptcy Code are excluded*.

The term "Carve Out" shall mean (a) allowed administrative expenses pursuant to

11

28 U.S.C. § 1930(a)(6), and (b) allowed fees and expenses incurred by Court-approved attorneys retained pursuant to sections 327, 328, and 1103 of the Bankruptcy Code and as provided for in the Approved Budget; provided, however, for each advance by the Lender under the DIP Credit Facility, the Carve-Out for professional fees shall be reduced (dollar for dollar) by the amount of legal fees and expenses funded pursuant to the amounts set forth in the Approved Budget for the prior period corresponding to such advance provided however that any budgeted but unfunded amounts for professional fees in a particular period may be used in any other period of the Approved Budget; provided, further that the Carve Out shall continue to apply to funds advanced to the Debtor for purposes of paying professional fees under the Approved Budget, but which have not yet been disbursed notwithstanding any termination of the DIP Credit Facility. Nothing herein shall be construed to affect the amount of fees or expenses to which any party may otherwise be entitled, and provided further that nothing herein shall be construed to impair the ability of any party to object to any of the fees, expenses, reimbursement, or compensation described above. Following an Event of Default, in addition to the professional fees and expenses incurred payable pursuant to the Approved Budget through the week of the occurrence of the Event of Default and otherwise payable pursuant to the Approved Budget, the Lender shall advance up to $25,000.00 (the "Default Advance") for professional fees incurred by Court-approved attorneys retained pursuant to sections 327, 328 and 1103 of the Bankruptcy Code after such Event of Default, and/or for fees or expenses that may become due to any Chapter 7 Trustee, if the case is converted to one under Chapter 7, but only to the extent that amounts previously advanced by Lender for the purpose of paying budgeted legal or professional fees together with retainers previously paid, are insufficient to satisfy the allowed amount of such pre- and post-default fees and expenses. In event the Chapter 11 Case is dismissed or converted, or the jurisdiction of the Bankruptcy Court is otherwise terminated, fees and expenses allowed and paid to professionals on an interim or final basis shall not be subject to disgorgement for the benefit of the Lender.

In addition, other than the Carve Out, notwithstanding anything to the contrary contained in this Order, and irrespective of existing retainers, in no event shall Lender be obligated to fund any budgeted expense, including any claim to surcharge the collateral under 11 U.S.C. § 506(c) and including legal or other professional fees except at such time and in such amounts as are set forth in the Approved Budget, provided that in no event shall Lender be obligated to fund any expense, excluding the Carve Out, if doing so would, when combined with the amounts advanced by the Lender under the DIP Credit Facility, exceed the aggregate principal amount of the DIP Credit Facility.

In partial consideration of the Carve-Out, the Debtor on behalf of itself and its bankruptcy estate waives (i) any right or claim to surcharge the Lender, the DIP Credit Facility or Collateral pursuant to 11 U.S.C. § 506(c) or otherwise and (ii) the "equities of the case" exception in Section 552(b) of the Bankruptcy Code

(b)    Liens Automatically Perfected

All the above-described pledges, security interests and mortgages, including the Liens, securing the DIP Obligations shall be deemed created and fully perfected and effective upon entry of any DIP Credit Facility Order, without the need for any additional documentation. If the Lender requests, the Debtor shall cooperate with Lender to execute and record further documentation on terms, and pursuant to documentation, satisfactory to the Lender, and, subject to customary and limited exceptions to be agreed upon.

(c)    Super Priority Administrative Claims

In addition to the Liens granted pursuant to Sections 364(c)(2), (c)(3) and (d)(1) of the Bankruptcy Code, the Lender shall also have and be entitled to an administrative priority expense claim in the amount of all DIP Obligations and, pursuant to Section 364(c)(1) of the Bankruptcy Code, to a superpriority administrative expense claim in the amount of all DIP Obligations (the "Superpriority Claim") with priority over all other costs and expenses of the kinds specified in, or ordered pursuant to, Sections 105, 326, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1114 or any other provisions of the Bankruptcy Code, subject only to the Carve-Out.

Wherever in this Order reference is made to any property or assets of the Debtor (including, without limitation, any of the Collateral), such reference shall be understood to include all property of the estate of the Debtor created under Section 541 of the Bankruptcy Code, including property acquired post-petition. Notwithstanding the foregoing, the Liens shall be subject to the Carve-Out as set forth herein, and Liens granted on any assets acquired post-petition from the Debtor's subsidiaries are not entitled to Superpriority status under Section 364(c)(1) unless and until approved at the Final Hearing.

12.    Evidence of Liability; Automatic Perfection of Liens.    This Order shall be sufficient and conclusive evidence of the liability of the Debtor for all   DIP Obligations respecting advances made in accordance with this Order, the Term Sheet, and the DIP Loan Documents and shall be sufficient and conclusive evidence of   (i) the priority, perfection, validity, and enforceability of all of the Liens on the Collateral granted to the Lender as set forth

13

herein, and (ii) the validity and enforceability of the Term Sheet, and DIP Loan Documents, without any further action of the Debtor or any other party. The Lender shall not be required to file any financing statement, mortgage, deed of trust, assignments of rents, notice of lien, and/or any similar document or take any other action (including taking possession of any of the Collateral or obtaining control agreements with respect to bank accounts) in order to validate the perfection of the Liens. If the Lender shall, in its discretion, elect for any reason to file any such financing statements, mortgages, deeds of trust, assignments of rent, and/or other documents with respect to such security interests and liens, the Lender is hereby authorized to do so without seeking modification of the automatic stay under 11 U.S.C. § 362, and the Debtor is authorized and directed to execute, or cause to be executed, all such financing statements, mortgages, deeds of trust, assignments of rents, and/or other agreements, documents, or instruments upon the Lender's request and the filing, recording or service thereof (as the case may be) of such financing statements, or other agreements, documents, or instruments shall be deemed to have been made at the time of and on the Petition Date. The Lender may, in its discretion, file a certified copy of this Order in any filing or recording office in any state, county or other jurisdiction in which the Debtor has an interest in real or personal property and, in such event, the subject filing or recording officer is authorized and directed to file or record such certified copy of this Interim Order. To the extent that any applicable non-bankruptcy law would otherwise restrict the grant, scope, enforceability, attachment, or perfection of the security interests and liens authorized or created hereby, or otherwise would impose filing or registration requirements with respect thereto, such law is hereby pre-empted to the maximum extent permitted by the United States Constitution, the Bankruptcy Code, applicable federal law, and the judicial power of the United States Bankruptcy Court or other federal court (provided that the

14

Lender may still take such steps as it wishes to perfect the security interests and liens under otherwise applicable state law without waiving the benefits of this provision of this Order).

13. Compliance with Approved Budget. The Debtor is strictly prohibited from using funds advanced under the DIP Credit Facility except in accordance with this Order and the Approved Budget subject to the terms of the Term Sheet and DIP Loan Documents. The Debtor shall be permitted to use the funds advanced under the DIP Credit Facility solely to pay the expenses and costs set forth in the Approved Budget, in an amount not to exceed those amounts set forth in the Approved Budget, subject to the terms of the Term Sheet and DIP Loan Documents. Notwithstanding anything in this Order or the Approved Budget to the contrary, the Lender reserves all rights to object to any motion, application, or other request for relief that relates to the items referred to or covered by the Approved Budget.

14. Authorized Expenses in Approved Budget. The expenses in any particular category of the Approved Budget which are authorized to be paid in a particular period of the Approved Budget can be paid in any period of the Approved Budget, provided that the total amount of expenses paid in such category for all periods of the Approved Budget does not exceed the total amount authorized for in such category all periods in the Approved Budget, including any authorized variance. Further, notwithstanding any termination of the DIP Credit Facility or any Event of Default, any expenses authorized in the Approved Budget for periods prior to the termination of the DIP Credit Facility or Event of Default can be paid after such termination or Event of Default. The amounts payable under the Approved Budget for professional fees and expenses can exceed the specified amounts set forth in the Approved Budget (but only with the consent of Lender) in the event of an unexpected development in the case. Payments made in accordance with the Approved Budget shall constitute payments made in

the ordinary course of business of the Debtor; however, to the extent any payments are outside the ordinary course of the Debtor's business, the Court approves such payments pursuant to Section 363(b)(1) since there exists a valid business justification for such payments.

15. <u>Lender Expenses</u>. All costs incurred by the Lender in any way related to the Debtor or associated with the DIP Loan or the bankruptcy case or planning related to them, including, but not limited to, the reasonable fees and expenses of its financial advisor, Meketa Investment Group, legal fees and expenses of its primary counsel (Kean Miller LLP), local counsel (Sherman & Howard), any Participant's counsel (e.g., Greenberg Traurig, LLP), counsel retained in Korea and Thailand, and all related costs and all costs and fees associated with any appraisal, report, or review shall be chargeable to the DIP Credit Facility, but shall not reduce the amount available to be drawn by the Debtor under the DIP Credit Facility, after three (3) business days' notice to Debtor, the U.S. Trustee, CapFlow, and any official committee formed in the case ("<u>Notice Parties</u>"). In the event any of the Notice Parties have an objection to the compensation or reimbursement sought and such Notice Party is unable to reach an agreement with the professionals of the Lender or Participant with respect thereto, any undisputed amounts may be paid by the Debtor and the Lender's or Participant's professional may file a motion for expedited hearing in the Bankruptcy Court to resolve the dispute. Such payments made without objection, or allowed by this Court over an objection made pursuant to this paragraph, are treated as an allowed advance under the DIP Credit Facility and are not subject to further review or challenge, and advances made for such expenses are final, not subject to further review, and fully protected under Section 364(e) of the Bankruptcy Code. To the extent Lender provides any of these services internally, Debtor will reimburse Lender for these costs at market rates.

16

16. <u>Sale and/or Orderly Liquidation of Debtor's Assets.</u> Debtor will continue to use best efforts to conduct a going concern sale of its assets in accordance with the Interim Order and in the Bidding Procedures Order, and as summarized below:

(1) The Bidding Procedures Motion will be filed by December 16, 2014, with a hearing as soon as practical but in any event no later than January 9, 2015;

(2) The Debtor and Lender agree that the Bidding Procedures Motion will request the following sale-process deadlines (the "<u>Anticipated Deadlines</u>"), which this Court will consider but is under no obligation to approve, at the hearing on the Bidding Procedures Order:

    (a) The Bidding Procedures Order will be entered by January 9, 2015;

    (b) All Qualified Bids are due by the Bid Deadline of February 23, 2015;

    (c) On or before February 27, 2015, the Debtor shall complete the Auction, if applicable, among the Qualified Bidders;

    (d) Should Debtor not receive a Qualified Bid by the Bid Deadline or should the Back Up Transaction be determined to be the Prevailing Bid at the Auction, then the Debtor shall seek approval of the sale of substantially all of the Borrower's Assets at the Sale Hearing to Lender or its nominee for a purchase price in an amount equal to a credit bid of all amounts advanced under the DIP Credit Facility (the "<u>Back Up Transaction</u>"), plus cash in an amount sufficient to pay all unpaid administrative expenses in an amount not to exceed $50,000.00 in the aggregate, with a closing date of no later than March 10, 2015. The asset purchase agreement, other agreements, and all pleadings related to the Back Up Transaction shall be in a form and substance acceptable to Lender.

    (e) Any objections to Sale Motion, other than to Designated Agreements and proposed Cure Costs, as defined in the Bidding Procedures Order, must be emailed to counsel for Debtor, Lender, and any Official Committee of Unsecured Creditors on or before the Objection Deadline of at least two business days before the hearing on the Prevailing Bidder Sale Order.

    (f) On or before February 27, 2015, the Debtor shall receive the approval of the Bankruptcy Court for the Sale Transaction to the Prevailing Bidder and the resulting Prevailing Bidder Sale Order shall be in form and substance agreed to by the Lender, including providing for the payment at closing of the sales proceeds to the Lender in reduction of all outstanding pre- and post-bankruptcy indebtedness owed by Debtor to Lender.

(3) Lender has no obligation to continue to advance funds under the Interim Credit

Facility after January 9, 2015 if the Court does not enter a Bidding Procedures Order including the Anticipated Deadlines by that date.

17. <u>Events of Default</u>. Each of the following shall be an "Event of Default" under the DIP Credit Facility:

(a) the occurrence of any of the following events, with no cure period, without the prior written consent of Lender:

    (i) Entry of an order dismissing the Chapter 11 Case or converting the Chapter 11 Case to a Chapter 7 case;

    (ii) [intentionally deleted];

    (iii) Entry of an order of the Chapter 11 Case appointing an examiner with expanded powers;

    (iv) Entry of an order granting any other super-priority claim or lien equal or superior to that granted to the Lender prior to full and indefeasible repayment of the DIP Credit Facility;

    (v) Entry of an order reversing, vacating, or otherwise modifying, or staying the DIP Credit Facility Order, or the DIP Credit Facility Order shall otherwise cease to be in full force and effect;

    (vi) The entry of an order granting relief from the automatic stay so as to allow a third party to proceed against any material assets of the Debtor;

    (vii) The consummation of the sale of any material portion of any of the Debtor's assets without the DIP Credit Facility being paid in full from the sale of such assets;

    (viii) a change in control of the Debtor; or

    (ix) failure by the Debtor to pay any amount as and when due under the DIP Loan Documents.

18

(b) the occurrence of any of the following events, if they remain uncured after the expiration of a three (3) business day notice-and-cure period (which notice shall be filed in the record of the bankruptcy case):

(i) Debtor advancing or incurring in excess of 110% of the amounts allowed under the Approved Budget during a weekly budget period;

(ii) failure by the Debtor to perform or comply with the covenants contained in the DIP Loan Documents, the Interim Financing Order, the Final Financing Order, the Bidding Procedures Order, or the Prevailing Bidder Sale Order;

(iii) the Debtor's breach of its obligations to comply with the covenants or breach of any representations or warranty in the DIP Loan Documents;

(iv) the Debtor's failure to meet its obligations with respect to the sale and/or orderly liquidation of the Debtor's assets as set forth above and/or in the Bidding Procedures Order;

(v) entry of an order in the Chapter 11 Case adverse to the Lender's rights in and to any of Lender's collateral;

(vi) entry of an order modifying the Interim Financing Order or the Final Financing Order without Lender's consent;

(vii) Debtor's negotiation for alternative financing from another source that provides for the priming Lender's rights in the Collateral;

(viii) Material misstatements by Debtor to Lender regarding the assets, liabilities, employees, expenses, or operations of the Debtor or the Debtor's subsidiaries, including Lender's post-petition discovery of material misstatements to Lender made pre-petition; or

(ix) Debtor's proposal of a plan of reorganization or sale of assets that does not result in the payment of all debts owed to Lender at closing, unless approved by Lender; and

(x) Entry of an order appointing a chapter 11 trustee in the Chapter 11 Case;

18. <u>Remedies</u>. Upon the occurrence of an Event of Default,

(a) the Lender has no further obligation to make advances under the DIP Credit Facility, and except for the Carve Out, the Debtor shall have no use of Lender's Cash Collateral or the DIP Credit Facility or any funds previously advanced thereunder;

(b)     after five (5) business days' notice, served by overnight delivery service or email upon the Debtor, the Debtor's counsel, any official committee (or, if applicable, their counsel), and the United States Trustee (the "Required Notice"), all of the indebtedness (including without limitation, the Pre-Petition Lender Debt and the amount of the DIP Availability advanced to the Debtor) to the Lender shall become immediately due and payable;

(c)     after the Required Notice, the Automatic Stay of Section 362 of the Code shall be automatically and completely vacated as to the Lender without further order of the Bankruptcy Court, and

(d)     after the Required Notice, the Lender, without further notice, hearing, or approval of the Bankruptcy Court, shall be authorized, at its option, to take any and all actions, and remedies that the Lender may deem appropriate to proceed against, take possession of, protect, and realize upon the collateral and any other property of the estate of the Debtor upon which the Lender has been or may hereafter be granted liens and security interests to obtain repayment of the indebtedness to the Lender.

The Lender shall have the relief set forth above unless the Debtor, or other party in interest, contests the occurrence of an Event of Default and the Bankruptcy Court determines the same prior to the expiration of the five (5) business days after the Required Notice.

19.     Incurrence of Debt. Neither the Debtor nor its estate shall incur any debt with priority equal to or greater than that of the Lender without full repayment of the DIP Obligations.

20.     No Waiver. Nothing herein shall be deemed to be a waiver by the Lender of its rights to request any other relief or additional and further protection of its interests in any property of the Debtor, to move for relief from the automatic stay, to seek the appointment of a trustee or examiner in the Chapter 11 Case or the dismissal of the Chapter 11 Case, or to request any other relief in the Chapter 11 Case.

21.     Preservation of Rights.  If the Chapter 11 Case is dismissed or converted, then neither the entry of this Order nor the dismissal or conversion of the Chapter 11 Case shall affect the rights of the Lender under the Term Sheet or the DIP Loan Documents, or the rights of the Lender under this Order, and all such rights and remedies of the above-referenced parties shall

20

remain in full force and effect as if the Chapter 11 Case have not been dismissed or converted. It shall constitute an Event of Default if the Debtor seeks, or if there is entered, any order dismissing the Chapter 11 Case. If an order dismissing the Chapter 11 Case is at any time entered, such order shall provide (in accordance with Sections 105 and 349 of the Bankruptcy Code) that (i) the Liens and the Superpriority Claims granted to and conferred upon the Lender shall continue in full force and effect and shall maintain their priorities as provided in this Order until all DIP Obligations shall have been paid and satisfied in full and the Liens and the Superpriority Claims shall, notwithstanding such dismissal, remain binding on the Debtor, the estate of the Debtor, any Chapter 7 or 11 Trustee appointed in the Chapter 11 Case, and all interested parties; and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purpose of enforcing the Term Sheet, the DIP Loan Documents, this Order, the Liens and the Superpriority Claims referred to herein. No reorganization plan shall alter the terms of repayment of any of the DIP Obligations as set forth in the Term Sheet and DIP Loan Documents or alter or abrogate any of the rights or benefits afforded to the Lender by the DIP Credit Facility Order, the Term Sheet, the DIP Loan Documents, the Liens or Superpriority Claims. In no event shall (i) the Liens be subject to any pre-petition or post-petition lien or security interest that is avoided and preserved for the benefit of the Debtor's estate pursuant to Section 551 of the Bankruptcy Code; and (ii) any person or entity who pays (or, through the extension of credit to the Debtor, causes to be paid) any of the DIP Obligations be subrogated, in whole or in part, to any rights, remedies, claims, privileges, liens, or security interests granted to or in favor of, or conferred upon, the Lender, by the terms of the Term Sheet, the DIP Loan Documents or the DIP Credit Facility Order, until such time as all of the DIP Obligations are paid in full to the Lender.

22.     Subordination of CapFlow First Position Lien.  Notwithstanding anything set forth herein, the subordination of the first-position lien of CapFlow Funding Group Managers LLC ("CapFlow") is limited to the funds advanced as approved in this order and CapFlow reserves its rights to object to the imposition of a Superpriority Lien in excess of $1.35 million for all Debtor expenses, Lender Expenses, or Carve Out expenses.

23.     Immediate Effect; Protection of Order. The provisions of this Order shall be effective immediately, and notwithstanding any order that may be entered confirming any plan of reorganization or converting the Chapter 11 Case from chapter 11 to chapter 7 or otherwise, this Order and any rights, remedies, claims, privileges, liens, or security interests granted to or in favor of, or conferred upon, the Lender, by the terms of the Term Sheet, the DIP Loan Documents or the DIP Credit Facility Order, shall remain in full force and effect until such time as all of the DIP Obligations are paid in full to the Lender.

24.     No Prejudice to the Right to Credit Bid.  Nothing in the DIP Credit Facility Order shall prejudice the right of the Lender in any sale approved by the Court that includes the Collateral to credit bid pursuant to section 363(k) of the Bankruptcy Code.

25.     Successors and Assigns.  The provisions of the DIP Credit Facility Order shall be binding upon and inure to the benefit of the Lender, the Debtor and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed as a legal representative of the Debtor or the Debtor's bankruptcy estate.

26.     Effect on Appeal.  Consistent with 11 U.S.C. § 364(e), if any or all of the provisions of the DIP Credit Facility Order are hereafter modified, vacated, or stayed:

                    (a)     such stay, modification, or vacation shall not affect the validity of any obligation, indebtedness, liability, security interest, or lien granted or incurred by

22

the Debtor to Lender, including the DIP Obligations, Liens, and Superpriority Claims, prior to the effective date of such stay, modification, or vacation, or the validity, enforceability, or priority of any security interest, lien, priority, or right authorized or created under the original provisions of this Interim Order or pursuant to the Term Sheet or DIP Loan Documents; and

(b)     any indebtedness, obligation, or liability, including the DIP Obligations and Superpriority Claims, incurred by the Debtor to the Lender under the Term Sheet, DIP Loan Documents or this Order prior to the effective date of such stay, modification, or vacation shall be governed in all respects by the original provisions of this Interim Order, and the Lender shall be entitled to all the rights, remedies, privileges, and benefits, including the Liens and the Superpriority Claims granted herein, with respect to any such indebtedness, obligation, or liability, including the DIP Obligations. All DIP Obligations have been created in reliance upon the DIP Credit Facility Order and, therefore, the DIP Obligations incurred or created prior to the effective date of any stay, modification, or vacation of the DIP Credit Facility Order cannot (i) be subordinated, (ii) lose the priority of the Liens or the Superpriority Claims, or (iii) be deprived of the benefit of the status of the Liens, the Superpriority Claims, or any other liens or claims granted to the Lender under the DIP Credit Facility Order, the Term Sheet or the DIP Loan Documents, as a result of any subsequent order in the Chapter 11 Case, or any superseding case, of the Debtor.

27.     <u>Use of Cash Collateral</u>. The Debtor shall be, and hereby is, authorized to use cash which may constitute Cash Collateral on the terms and conditions set forth in this Order.  The

Debtor is authorized to use cash which may constitute Cash Collateral in accordance with the Approved Budget.

28. <u>Final Hearing and Objections</u>. The Final Hearing on the Motion will be held on **January 20, 2015 at 11:00 a.m.** The Debtor shall within two (2) business days of entry of this Order mail copies of a notice of the entry of this Order (the "<u>Notice</u>"), together with a copy of this Order, to all parties in interest. The notice of entry of this Order shall state that any party in interest wishing to object to the interim relief granted by this Order or to any other relief requested by the Motion not yet granted shall file written objections with the Court within fourteen (14) days after service of this Order, except that any official committee of unsecured creditors may file its objections as late as **January 16, 2015 at 5:00 p.m. Mountain**, which objections shall be served so that the same are received on or before such date and time by: (a) the Debtor's counsel, William H. Patrick, III and Tristan Manthey, Heller, Draper, Patrick, Horn & Dabney LLC, 650 Poydras Street, Suite 2500, New Orleans, Louisiana 70130, wpatrick@hellerdraper.com and tmanthey@hellerdraper.com, and Talitha Gray Kozlowski, Gordon Silver, One East Washington Street, Suite 400, Phoenix, Arizona 85004, tgray@gordonsilver.com; (b) the Lender's counsel, Eric Lockridge, Kean Miller LLP, II City Plaza, 400 Convention Street, Suite 700, Baton Rouge, Louisiana 70802, eric.lockridge@keanmiller.com and (c) the Office of the United States Trustee.

# GENERAL TERM SHEET FOR POST PETITION, DEBTOR-IN-POSSESSION FINANCING (Revised)

## T O

## SNTECH, INC., a Delaware corporation ("SNT" or "Borrower")

## FROM

## MUNICIPAL EMPLOYEES RETIREMENT SYSTEM OF LOUISIANA, as lender and as collateral agent and administrative agent
### (together with its participants, successors and assigns, the "Lender")

### December 17, 2014

This General Term Sheet for Post-Petition, Debtor-in-Possession Financing ("Term Sheet") is not intended to be and should not be construed as an offer, a commitment, nor agreement to lend, nor should it be construed as an attempt to establish all of the terms and conditions relating to the Loan (hereinafter defined). It is intended only to be indicative of certain terms and conditions around which credit approval may be sought, and if approved, how the loan documents might be structured, and shall not preclude negotiations within the general scope of these terms and conditions. No person or entity shall have any obligation to commence or thereafter continue any negotiations to enter into any definitive, binding agreement with respect to the Loan, and no person or entity should rely on an eventual formation of any agreement. Any party may freely enter into negotiations with any other person or entity, and nothing herein shall preclude any party from entering into a binding agreement with any other person or entity. The foregoing shall apply to this Term Sheet, as well as to any prior and subsequent communications between the Borrower and Lender with respect to the Loan, and only a definitive, written agreement, executed by both Borrower and Lender, shall be binding on Borrower and Lender with respect to the Loan. Further, all terms set forth herein are subject to the following:

1.     Certain conditions precedent;

2.     The receipt by the Lender of formal internal approval for the proposed financing from Lender's Board of Trustees;

3.     The negotiation and execution of the definitive documents defined below as the DIP Loan Documents;

4.     The approval by the Lender of an Approved Budget (as amended) (the "Full Budget") showing projected weekly cash receipts, cash disbursements, and other financial information required by the Lender for each week from the Petition Date (hereinafter defined) through March 15, 2015;

5.     The approval by the Bankruptcy Court of the DIP Credit Facility (defined below) in a form acceptable to Lender.

# EXHIBIT "A"

**THE LENDER DOES NOT WAIVE, AND EXPRESSLY RESERVES, ALL DEFAULTS UNDER THE EXISTING PRE-PETITION DOCUMENTATION AND ALL RIGHTS TO ENFORCE THE TERMS OF SUCH DOCUMENTATION. BORROWER'S OBLIGATIONS TO COMPLY STRICTLY WITH THE TERMS THEREOF ARE NOT ALTERED IN ANY WAY AND CONTINUE IN FULL FORCE AND EFFECT SUBJECT TO ANY MODIFICATIONS SET FORTH IN THE DEFINITIVE DOCUMENTATION FOR THE DIP CREDIT FACILITY.**

| | |
|---|---|
| Borrower: | SNT |
| Participant at Origination: | Roland Interests, LLC (50% share) (possible) |
| Commitment Amount: | A debtor-in-possession credit facility (in total, the "DIP Credit Facility") to Borrower, upon the conditions set forth below and others included in the DIP Loan Documents, to provide funding in accordance with the Approved Budget for the period from the Petition Date through January 16, 2015 (the "Interim Period") and, if the terms of the DIP Credit Facility are approved at the final hearing scheduled for January 20, 2015 ("Final DIP Hearing"), then through March 15, 2015, for a total amount of up to $1,400,000.00 (the "DIP Availability"), pursuant only to a budget approved by Lender (the "Full Budget") and subject to certain exceptions noted below, plus all reasonable legal fees, costs, and related expenses incurred by Lender in any way related to the Borrower or its bankruptcy case, or in connection with financing the Borrower during its bankruptcy proceeding. The Borrower shall be limited to weekly draws against the amount established under the terms of the Full and Approved Budget. Any advances under the DIP Credit Facility are expressly conditioned upon the entry of the Interim Order (which shall not have been stayed at the time of any advance) and entry of the Final Order (which shall not have been stayed at the time of any advance), as designated by Lender (either and both of them the "DIP Credit Facility Order"), each in a form and substance acceptable to the Lender. Lender may sell or assign participations in the DIP Credit Facility.

However, Lender has no obligation to continue to advance funds under the DIP Credit Facility if any of the |

following occurs: (i) its total lending to Borrower (including its subsidiaries), including interest, Lender's attorneys' fees, and expenses, since November 1, 2014, meets or exceeds $1,350,000.00, unless all such amounts are given Superpriority status by the Bankruptcy Court; (ii) its total lending to Borrower (including its subsidiaries), including Lender's attorneys' fees and expenses (but not interest) since November 1, 2014, meets or exceeds $1,500,000.00, which amount may be reduced by any funds paid to a subsidiary of the Borrower for the purchase of assets the subsidiary represents that it owns; (iii) the occurrence of any other event or condition that allows Lender to cease advancing funds under the DIP Credit Facility as stated herein or in the Interim Order.

Use of Proceeds:     After final approval of the DIP Credit Facility, to (i) extinguish advances made by Lender under that certain Senior Secured Promissory Note dated November 10, 2014 (the "DIP Advance Loan") in anticipation of the filing of the case, which provided the funding that allowed the Borrower to preserve its assets and file its petition for relief, (ii) fund operating expenses of the Borrower in accordance with the Approved Budget, (iii) provide financing to facilitate the orderly sale of the Borrower's assets, including protecting overseas assets from seizure and/or sale; (iv) purchase assets owned by SNTech Co., Ltd. and Thai SNTech Co., Ltd., subject to further Lender approval; and (v) pay Lender's reasonable legal fees and expenses.

However, during the Interim Period, the Borrower may borrow only up to $475,000.00, and may only use the funds for the purposes stated on the budget attached to and incorporated into the Interim Order (the "Approved Budget"). No additional funds are available from Lender unless and until the Final Order has been entered;

Upon the entry of the Final Order, the Borrower may borrow from the Lender up to the remaining DIP Availability pursuant to the terms of the DIP Loan Documents and Approved Budget; and

Borrower shall use any funds advanced under the DIP Credit Facility only for the purposes and in the amounts

set forth in the Approved Budget.

No portion of the DIP Credit Facility, the Collateral (as defined below), including any cash collateral, are to be used by any party or professional to:

    (i)    challenge the validity, perfection, priority, extent or enforceability of the DIP Credit Facility or the liens on or security interests in the assets of the Borrower securing the DIP Credit Facility.

    (ii)    pursue through motion, complaint, or otherwise any other claims against the Lender in connection with the DIP Credit Facility or DIP Credit Facility Order (defined below), including any appeal of the DIP Credit Facility Order, or

    (iii)    pursue through motion, complaint, or otherwise any litigation against the Lender or its nominee in connection with any other claim or cause of action.

With respect to items in the budget identified as "International Expense—Purchase of Assets" reflecting funds to be expended for the purchase of assets from the Borrower's subsidiaries in Korea and Thailand, Lender has no obligation to make any funds available under the DIP Credit Facility to fund those anticipated expenditures unless Lender, in its sole discretion, determines that doing so is in its best interest. Nothing herein shall impair Lender or Lender's designee from purchasing any assets from or loaning funds to a subsidiary of the Borrower.

**Term:**

The DIP Credit Facility shall mature and be immediately due and payable in full, and the Lender shall have no further obligation to make advances under the DIP Credit Facility and except for the Carve Out the Borrower shall have no further use of Cash Collateral or the DIP Credit Facility or any funds previously advanced thereunder, upon the earliest to occur of the following events, at Lender's sole election:

(a) the occurrence of a Default or an Event of Default (as defined herein and in the DIP Loan Documents);

(b) the indefeasible payment in full of the Obligations owing to the Lender;

(c) January 21, 2015, if a Final Order approving the DIP Credit Facility on a final basis in a form acceptable to Lender has not been entered by that date, or if the Interim Period has not been extended by a court order in a form acceptable to Lender by that date;

(d) the closing of a sale of Borrower or substantially all of Borrower's marketable assets to any purchaser; or

(e) March 13, 2015.

Upon the expiration of the Term, all outstanding principal and interest incurred or advanced pursuant to the DIP Credit Facility shall be due and payable. The DIP Credit Facility must be paid before any other administrative expenses of the estate or liens on the Collateral (as defined below), subject to the Carve Out, defined below.

While not an Event of Default, Lender is under no obligation to continue advancing funds under the DIP Credit Facility after January 9, 2015, if the Court does not enter the Bidding Procedures Order, including the deadlines stated in the Bidding Procedures Motion, by that date.

Collateral:    Subject to the Carve Out (defined below), pursuant to Sections 364(c) and (d), the amount of the obligations of the Borrower for the repayment of the DIP Credit Facility and any and all interest, costs, expenses and any other amounts Borrower owes Lender under the Term Sheet, the DIP Loan Documents, Interim Order and Final Order (collectively, all such amounts, the "DIP

Obligations") shall be secured by automatically perfected first priority, priming, and post-petition security interests in and liens ("Liens") on all of the properties and assets of the Borrower, real and personal, including, but not limited to, the "Collateral" and all other assets described in the DIP Loan Documents, the Interim Order, Final Order and hereafter acquired real and personal property of the Borrower, and its bankruptcy estate (including claims and causes of action), whether acquired prior to or after the Petition Date, whether now owned and existing or hereafter acquired, created or arising, and all products and proceeds thereof (including without limitation, claims of the Borrower against third parties for loss or damage to such property), including all accessions thereto, substitutions and replacements thereof, and wherever located, except that avoidance actions under sections 544, 545, 547, 548, 550, 551, or 553 of the Bankruptcy Code are excluded. Upon entry of the Final Order, the Collateral shall also secure all pre-petition debts owed to Lender, but such liens granted upon entry of the Final Order to secure pre-petition debts of Lender shall not prime any valid, enforceable, non-avoidable liens on Collateral of other pre-petition secured creditors for their pre-petition claims not otherwise primed by Lender's pre-petition liens on the Collateral.

The term "Carve Out" shall mean (a) allowed administrative expenses pursuant to 28 U.S.C. § 1930(a)(6), and (b) allowed fees and expenses incurred by Court-approved attorneys retained pursuant to sections 327, 328, and 1103 of the Bankruptcy Code and as provided for in the Approved Budget; provided, however, for each advance by the Lender under the DIP Credit Facility, the Carve-Out for professional fees shall be reduced (dollar for dollar) by the amount of legal fees and expenses funded pursuant to the amounts set forth in the Approved Budget for the prior period corresponding to such advance provided however that any budgeted but unfunded amounts for professional fees in a particular period may be used in any other period of the Approved Budget; provided, further that the Carve Out shall continue to apply to funds advanced to the Borrower for purposes of paying professional fees under the Approved Budget, but which have not yet been disbursed

notwithstanding any termination of the DIP Credit Facility. Nothing herein shall be construed to affect the amount of fees or expenses to which any party may otherwise be entitled, and provided further that nothing herein shall be construed to impair the ability of any party to object to any of the fees, expenses, reimbursement, or compensation described above. Following an Event of Default, in addition to the professional fees and expenses incurred through the week of the occurrence of the Event of Default and otherwise payable pursuant to the Approved Budget, the Lender shall advance up to $25,000.00 (the "Default Advance") for professional fees incurred by Court-approved attorneys retained pursuant to sections 327, 328 and 1103 of the Bankruptcy Code after such Event of Default, and/or for fees and/or expenses that may become due to a chapter 7 trustee if the case is converted to one under chapter 7, but only to the extent that amounts previously advanced by Lender for the purpose of paying budgeted legal or professional fees together with retainers previously paid, are insufficient to satisfy the allowed amount of such pre- and post-default fees and expenses. In event the Chapter 11 Case is dismissed or converted, or the jurisdiction of the Bankruptcy Court is otherwise terminated, fees and expenses allowed and paid to professionals on an interim or final basis shall not be subject to disgorgement for the benefit of the Lender.

In addition, other than the Carve Out, notwithstanding anything to the contrary contained in the Interim Order, and irrespective of existing retainers, in no event shall Lender be obligated to fund any budgeted expense, including any claim to surcharge the collateral under 11 U.S.C. § 506(c) and including legal or other professional fees except at such time and in such amounts as are set forth in the Approved Budget, provided that in no event shall Lender be obligated to fund any expense, including the Carve Out, if doing so would, when combined with the amounts advanced by the Lender under the DIP Credit Facility, exceed the aggregate principal amount of the DIP Credit Facility.

In partial consideration of the Carve-Out, except as may otherwise be provided in any DIP Credit Facility Order

or order of the Court approving any sale of Collateral, in each such case acceptable to Lender in its sole discretion, the Borrower on behalf of itself and its bankruptcy estate waives (i) any right or claim to surcharge the Lender, the DIP Credit Facility or Collateral pursuant to 11 U.S.C. § 506(c) or otherwise and (ii) the "equities of the case" exception in Section 552(b) of the Bankruptcy Code.

**Superpriority Claims:**

The Lender shall also receive and be entitled, pursuant to Section 364(c)(1) of the Bankruptcy Code, to a super-priority administrative expense claim in the amount of the DIP Obligations (the "Superpriority Claim") with priority over all other costs and expenses of the kinds specified in, or ordered pursuant to, sections 105, 326, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1114 or any other provisions of the Bankruptcy Code, subject only to the Carve-Out.

**Application of Proceeds from Asset Sales:**

The net cash proceeds of Bankruptcy Court-authorized asset sales shall be used first for repayment of the DIP Credit Facility, with the balance to be distributed in accordance with orders of the Court, following notice and a hearing.

**Interest Rate:**

Interest shall accrue in respect of all DIP Obligations (as defined in the Loan Agreement) at the Interest Rate of fifteen percent (15%) and, following the occurrence of an Event of Default (defined below), twenty-one percent (21%).

**Fees:**

Borrower shall pay to Lender a commitment fee in an amount equal to three (3%) percent of the DIP Availability (the "Commitment Fee"). The Commitment Fee due on funds approved by the Interim Order shall be earned and paid upon the entry of the Interim Order, but is subject to objection by the Committee as provided in the Interim Order. The Commitment Fee due on new funds approved by the Final Order shall be earned and paid upon the entry of the Final Order.

Borrower does not owe monthly fees to Lender or other fees other than the Commitment Fee.

**Expenses:**

All costs incurred by the Lender in any way related to the

Borrower or associated with the Loan or the bankruptcy case or planning related to them, including, but not limited to, the reasonable fees and expenses of its financial advisor, Meketa Investment Group, legal fees and expenses of its primary counsel (Kean Miller LLP), local counsel (Sherman & Howard), Participant's counsel (Greenberg Traurig, LLP), counsel retained in Korea and Thailand, and all related costs and all costs and fees associated with any appraisal, report, or review shall be chargeable to the DIP Credit Facility, but shall not reduce the amount available to be drawn by the Borrower under the DIP Credit Facility, after three (3) business days' notice to Borrower, the U.S. Trustee, CapFlow, and any official committee formed in the case ("Notice Parties"). In the event any of the Notice Parties have an objection to the compensation or reimbursement sought and such Notice Party is unable to reach an agreement with the professionals of the Lender or Participant with respect thereto, any undisputed amounts may be paid by the Borrower and the Lender's or Participant's professional may file a motion for expedited hearing in the Bankruptcy Court to resolve the dispute. To the extent Lender provides any of these services internally, Borrower will reimburse Lender for these costs at market rates.

**Conditions to Closing and to Each Disbursement Under the DIP Credit Facility:**

The following conditions precedent to the occurrence of the Closing Date and the making of the DIP Credit Facility and to each draw on the DIP Credit Facility shall be met:

(i) The DIP Budget, as updated, shall have been reviewed and approved by the Lender, in writing;

(ii) The DIP Credit Facility Order shall have been entered by the Bankruptcy Court, after notice given and a hearing conducted in accordance with Rule 4001(c) of the Federal Rules of Bankruptcy Procedure (and any applicable local bankruptcy rules), authorizing and approving the transactions contemplated by the documents evidencing the DIP Credit Facility and finding that the Lender is extending credit to the

Borrower in good faith within the meaning of Bankruptcy Code section 364(e), which DIP Credit Facility Order shall

(a) approve the payment by the Borrower of all of the fees and expense reimbursements provided for herein,

(b) otherwise be in form and substance satisfactory to the Lender; and

(c) be in full force and effect and shall not have been stayed, reversed, vacated, subject to appeal, or otherwise modified in a manner adverse to the Lender;

(iii) With respect to advances under the Interim Order, Lender may make advances available after entry of the Interim Order provided that the Interim Order:

(a) approves this Term Sheet and advances pursuant to this Term Sheet;

(b) grants automatically perfected first priority, priming, and post-petition security interests in and liens over the Collateral and administrative-priority claims in favor of Lender in accordance with this Term Sheet to secure all funds advanced under the Interim Order on a final basis in all respects, and Superpriority Claim status and Superpriority Liens, all not subject to further challenge or review, and all fully protected by Section 364(e), with the exception that Superpriority Claims and Liens related to the purchase of assets from a subsidiary of the Borrower are subject to review and challenge through the objection process stated in the Interim Order;

(c) finds this Term Sheet and the DIP Credit Facility were negotiated at arms' length and in good faith and provides Lender with all the protections of 364(e) of the Bankruptcy Code;

(d) prohibits other security interests and liens on the Collateral except as expressly permitted in this Term Sheet;

(e) requires the Borrower to pay the DIP Credit Facility on maturity, including acceleration due to an Event of Default; and

(f) is otherwise in form and substance acceptable to Lender in Lender's sole discretion.

(iv) With respect to advances under the Final Order, no advances will be available unless the Final Order provides for the validity and priority of the Liens over all of the Borrower's assets to secure any and all indebtedness to Lender and payment of the DIP Advance Loan, which shall be an integral part of the Final Order and not subject to further review after the entry of the Final Order. However, such Liens granted upon entry of the Final Order to secure pre-petition debts of Lender shall not prime any valid, enforceable, non-avoidable liens on Collateral of other pre-petition secured creditors for their pre-petition claims not otherwise primed by Lender's pre-petition liens on the Collateral.

Unless an objection is filed timely under the deadlines set in the Interim Order (the "Objection Rights") or other order of the Bankruptcy Court and sustained by the Bankruptcy Court (1) to the Collateral securing Lender's pre-petition debt, (2) to the validity, enforceability, priority, perfection, or the amount of Lender's prepetition indebtedness, and Lender's pre-petition security interests in and liens on the Borrower's assets, or (3) to the releases granted herein for the benefit of Lender: (i) the Collateral shall secure all pre-petition debts owed to Lender, but such liens to secure pre-petition debts of Lender shall not prime any valid, enforceable, non-avoidable

liens on Collateral of other pre-petition secured creditors for their pre-petition claims not otherwise primed by Lender's pre-petition liens on the Collateral; (ii) Lender's pre-petition indebtedness shall constitute allowed claims (without the necessity of filing proofs of claim) against Borrower and shall not be subject to any contest, objection, recoupment, defense, counterclaim, offset, claim of subordination, claim of re-characterization, claim of avoidance of any nature, attack or challenge under the Bankruptcy Code, other applicable non-bankruptcy law, or otherwise; (iii) Lender's prepetition liens shall be deemed legal, valid, binding, enforceable, duly perfected, not subject to defense, counterclaim, offset of any kind, or subordination, and such liens are otherwise unavoidable; and (iv) Lender, Lender's prepetition indebtedness, Lender's prepetition loan documents, and Lender's prepetition liens shall not be subject to any other or further claims, counterclaims, causes of action, lawsuits, or challenges by any party-in-interest or any successor thereto (including, without limitation, any chapter 7 or 11 trustee appointed by or elected for Borrower), and Borrower, all other parties and all other persons shall be forever barred and enjoined from taking any of the actions or asserting any of the claims or defenses set forth in the foregoing clauses (i), (ii), (iii), and (iv). Nothing in the Final Order vests or confers on any person, including any committee appointed in this case, standing or authority to pursue any cause of action belonging to Borrower or its estates, including, without limitation, any claims or defenses with respect to Lender's prepetition liens or the prepetition indebtedness.

(v) Execution and delivery by Borrower of all documentation in respect of the DIP Credit Facility reasonably satisfactory to the Lender, provided that Lender and Borrower may agree that Borrower may request and Lender may

advance funds under the terms stated herein once the Interim Order is entered even if all other documentation is not yet finalized.

(vi) Payment of all costs, fees, and expenses owing to the Lender, which shall be funded from the DIP Credit Facility.

(vii) Confirmation of sufficient insurance coverage for all property of Borrower, general liability insurance and other forms of insurance in amounts with deductibles reasonably satisfactory to the Lender,

(viii) There is no Event of Default or event which, with the giving of notice or lapse of time or both would constitute an Event of Default, and no material adverse change of condition of the Borrower.

(ix) Lender shall have received all information reasonably requested from Borrower within a reasonable time, including timely reports required by this Term Sheet and the DIP Credit Facility and information about its and its subsidiaries assets and liabilities.

(x) Borrower has waived any and all claims it may have against Lender, including claims under Article V of the Bankruptcy Code, subject to the Objection Rights, and specifically including Objection Rights by the Committee.

(xi) Any "first day" order shall be in form and substance reasonably satisfactory to Lender.

(xii) Lender has no obligations to make advances under the Approved Budget after January 9, 2015, if the Court does not enter the Bidding Procedures Order, including the deadlines stated in the Bidding Procedures Motion, by that date.

Representations and       The Borrower represents and warrants to Lender that it

Warranties:   has full corporate power and authority, subject to entry of the DIP Credit Facility Order, to enter into the DIP Credit Facility and to grant security interests in the Collateral, with any covenants against such borrowing in the loan documentation of other creditors superseded by the DIP Credit Facility Order, and the DIP Obligations are binding and enforceable upon entry of the DIP Credit Facility Order. The Borrower further represents and warrants to Lender that the Final Order shall contain a representation and stipulation acknowledging the validity and priority of Lender's pre-petition security position on Borrower's pre-petition assets and its Liens on the Collateral to secure all debt to Lender. Liens granted upon entry of the Final Order to secure pre-petition debts of Lender shall not prime any valid, enforceable, non-avoidable liens on Collateral of other pre-petition secured creditors for their pre-petition claims not otherwise primed by Lender's pre-petition liens on the Collateral.

Covenants:   Covenants governing the DIP Credit Facility will include customary performance, loan, and reporting covenants and will also include, without limitation, the following:

(a) Borrower's actual disbursements for any period on the Approved Budget are not more than one hundred ten percent (110%) of the projected disbursements for such period as set forth in the then-current Approved Budget. The foregoing calculation shall be tested weekly beginning one (1) week following the Petition Date.

(b) Borrower shall not file a motion to sell all or substantially all of the assets of the estate, including the Collateral ,or any reorganization or liquidation plan which does not provide for full and indefeasible payment of the DIP Credit Facility and release of all claims and causes of action held by or assertable by the Borrower against the Lender on account of the DIP Credit Facility.

(c) Borrower shall file a motion seeking court approval of bidding procedures for the sale of all of its assets (the "Bidding Procedures Motion") no later than December 16, 2014, and

request a hearing as soon as practical but in any event no later than January 9, 2015, which Bidding Procedures Motion will request approval for a marketing and sale schedule set forth herein.

Sale and/or Orderly Liquidation of Borrower's Assets:

Borrower agrees that it will continue to use best efforts to conduct a going concern sale of its assets in accordance with the Interim Order and in the Bidding Procedures Order, and as summarized below:

(a) The Bidding Procedures Motion will be filed by December 16, 2014, with a hearing as soon as practical but in any event no later than January 9, 2015;

(b) The Bidding Procedures Order will be entered by January 9, 2015;

(c) All Qualified Bids are due by the Bid Deadline of February 23, 2015;

(d) On or before February 27, 2015, the Borrower shall complete the Auction, if applicable, among the Qualified Bidders;

(e) Should Borrower not receive a Qualified Bid by the Bid Deadline or should the Back Up Transaction be determined to be the Prevailing Bid at the Auction, then the Borrower shall seek approval of the sale of substantially all of the Borrower's Assets at the Sale Hearing to Lender or its nominee for a purchase price in an amount equal to a credit bid of all amounts advanced under the DIP Credit Facility (the "Back Up Transaction"), plus cash in an amount sufficient to pay all unpaid administrative expenses not otherwise payable pursuant to the Approved Budget in an amount not to exceed $50,000.00 in the aggregate, with a closing date of no later than March 10, 2015. The asset purchase agreement, other agreements, and all pleadings related to the Back Up Transaction shall be in a form and

substance acceptable to Lender;

(f)     Any objections to Sale Motion, other than to Designated Agreements and proposed Cure Costs, as defined in the Bidding Procedures Order, must be filed with the Bankruptcy Court and emailed to counsel for Borrower, Lender, and any Official Committee of Unsecured Creditors at least two business days before the hearing on the Prevailing Bidder Sale Order.

(g)     On or before February 27, 2015, the Borrower shall receive the approval of the Bankruptcy Court for the Sale Transaction to the Prevailing Bidder and the resulting Prevailing Bidder Sale Order shall be in form and substance agreed to by the Lender, including providing for the payment at closing of all outstanding pre and post-bankruptcy indebtedness owed by Borrower to Lender.

Financial
Reporting:

The Borrower shall provide the Lender with the following financial reporting, and the documents evidencing the DIP Credit Facility will require that the Borrower provide:

(a)     monthly financial statements and operating reports, budget and operating plans for each period, with all financial statements of Borrower prepared on a consolidated basis;

(b)     on an as-requested basis all other information reasonably requested by the Lender.

(c)     copies of all pleadings, motions, applications, judicial information and other documents filed by or on behalf of the Borrower with the Bankruptcy Court or the U.S. Trustee in the Chapter 11 Case, or distributed by or on behalf of the Borrower to any official committee in any Chapter 11 Case;

(d)     no later than weekly, an update of the Approved Budget (which shall be re-forecast to reflect any material variances), with a weekly

reconciliation report comparing actual cash flows and financial results versus budgeted, in each case, in form satisfactory to Lender;

(e)   notice of default in any material contracts;

(f)   notice of significant changes to employment agreements; and

(g)   notice of any changes in management.

Budget Process:        Each week the cash flow forecast shall be subject to the Lender's review and approval, which will not be unreasonably withheld. The approved cash flow forecast shall be incorporated into a revised and restated DIP Proposed Budget, which will be subject to the Lender's approval, which will not be unreasonably withheld. Once approved, the Approved Budget shall be used to authorize disbursements under the DIP Credit Facility.

The expenses in any particular category of the Approved Budget which are authorized to be paid in a particular period of the Approved Budget can be paid in any later period of the Approved Budget, provided that the total amount of expenses paid in such category for all periods of the Approved Budget does not exceed the total amount authorized for in such category all periods in the Approved Budget, including any authorized variance. Further, notwithstanding any termination of the DIP Credit Facility or any Event of Default, any expenses authorized in the Approved Budget for periods prior to the termination of the DIP Credit Facility or Event of Default can be paid after such termination or Event of Default.

The amounts payable under the Approved Budget for professional fees and expenses can exceed the specified amounts set forth in the Approved Budget (but only with the consent of DIP Lenders) in the event of the appointment of a committee or other unexpected development in the case.

Events of Default:     Each of the following shall be an "Event of Default" under the DIP Credit Facility:

(a) the occurrence of any of the following events, with no cure period, without the prior written consent of Lender:

    (i) Entry of an order dismissing the Chapter 11 Case or converting the Chapter 11 Case to a Chapter 7 case;

    (ii) [reserved]

    (iii) Entry of an order of the Chapter 11 Case appointing an examiner with expanded powers;

    (iv) Entry of an order granting any other super-priority claim or lien equal or superior to that granted to the Lender, or any lien inferior to Lender without Lender's consent, prior to full and indefeasible repayment of the DIP Credit Facility;

    (v) Entry of an order reversing, vacating, or otherwise modifying, or staying the DIP Credit Facility Order, or the DIP Credit Facility Order shall otherwise cease to be in full force and effect;

    (vi) The entry of an order granting relief from the automatic stay so as to allow a third party to proceed against any material assets of the Borrower;

    (vii) The consummation of the sale of any material portion of any of the Borrower's assets without the DIP Credit Facility being paid in full from the sale of such assets;

    (viii) a change in control of the Borrower; or

    (ix) failure by the Borrower to pay any amount as and when due under the DIP Loan Documents.

(b) the occurrence of any of the following events, if they remain uncured after the expiration of a three (3) business day notice-and-cure period (which notice shall be filed in the record of the bankruptcy case) :

    (i) Borrower advancing or incurring in excess of 110% of the amounts allowed under the Approved Budget during a weekly budget period;

    (ii) failure by the Borrower to perform or comply with the covenants contained in the DIP Loan Documents, the Interim Order, the Final Order, the Bidding Procedures Order, or the Prevailing Bidder Sale Order;

    (iii) the Borrower's breach of its obligations to comply with the covenants set forth above;

    (iv) the Borrower's failure to meet its obligations with respect to the sale and/or orderly liquidation of the Borrower's assets as set forth above and/or in the Bidding Procedures Order;

    (v) entry of any order in the Chapter 11 Case adverse to Lender;

    (vi) entry of an order modifying the Interim Order or the Final Order without Lender's consent;

    (vii) Borrower's negotiation for financing from another source that provides for: (a) the priming of Lender's rights in any of the Collateral or (b) any impairment of the sale process as stated in any bidding procedures as approved by the Bankruptcy Court and by Lender or, prior to such Bankruptcy Court approval, as determined by Lender in its sole discretion after

consultation with the Trustee and/or any official committee appointed in this case;

(viii) Borrower's proposal of a plan of reorganization or sale of assets that does not result in the payment of all debts owed to Lender at closing, unless approved by Lender; or

(ix) Entry of an order for the appointment of a chapter 11 trustee in the Chapter 11 Case.

Exercise of Remedies:

Upon the occurrence of an Event of Default,

(1) the Lender has no further obligation to make advances under the DIP Credit Facility, and except for the Carve Out, the Borrower shall have no use of Lender's Cash Collateral or the DIP Credit Facility or any funds previously advanced thereunder;

(2) after five (5) business days' notice, served by overnight delivery service or email upon the Borrower, the Borrower's counsel, any official committee (or, if applicable, their counsel), and the United States Trustee (the "Required Notice"), all of the indebtedness (including without limitation, the Pre-Petition Lender Debt and the amount of the DIP Availability advanced to the Borrower) to the Lender shall become immediately due and payable;

(3) after the Required Notice, the Automatic Stay of Section 362 of the Code shall be automatically and completely vacated as to the Lender without further order of the Bankruptcy Court, and

(4) after the Required Notice, the Lender, without further notice, hearing, or approval of the Bankruptcy Court, shall be authorized, at its option, to take any and all actions, and remedies that the Lender may deem appropriate to

proceed against, take possession of, protect, and realize upon the collateral and any other property of the estate of the Borrower upon which the Lender has been or may hereafter be granted liens and security interests to obtain repayment of the indebtedness to the Lender.

The Lender shall have the relief set forth above unless the Borrower, or other party in interest, contests the occurrence of an Event of Default and the Bankruptcy Court determines the same prior to the expiration of the five (5) business days after the Required Notice.

| | |
|---|---|
| Indemnification: | During the interim period, subject to the Objection Rights of the Committee, U.S. Trustee and other parties of interest at Final Hearing, the Borrower shall indemnify and hold harmless, and provide limitations of liability to the Lender, and each of its affiliates and each of their respective officers, directors, employees, agents, advisors, attorneys, and representatives in connection with the DIP Credit Facility, subject to customary limitations for gross negligence and willful misconduct. |
| Governing Law: | Arizona. |
| DIP Loan Documents and APA: | The DIP Loan Documents, including the Interim Order and the Final Order, and any asset purchase agreement, including the Bidding Procedures Order and the Prevailing Bidder Sale Order, shall be in form and substance agreed to by counsel for the Lender. |
| Terms Further Defined in Related Documents: | Approved Budget<br>Auction<br>Back-Up Bid<br>Back-Up Transaction<br>Bankruptcy Court<br>Bid Deadline<br>Bidding Procedures Motion<br>Bidding Procedures Order<br>Cash Collateral<br>Collateral<br>Cure Costs<br>Designated Agreements<br>DIP Loan Documents |

DIP Obligations
DIP Proposed Budget
Final DIP Hearing
Final Order
Interest Rate
Interim Order
Petition Date
Pre-Petition Lender Debt
Prevailing Bid
Prevailing Bidder
Prevailing Bidder Sale Order
Prevailing Bidders Sale Hearing
Qualified Bids
Qualified Bidders
Sale Motion
Sale Transaction

Further, to the extent there are inconsistencies between the Interim Order and the Term sheet, the terms and conditions of the Interim Order shall control.

**IN WITNESS WHEREOF,** the parties hereto have caused this Term Sheet to be effective, executed, accepted and delivered by their proper and duly authorized officers as of the date set forth above.

**SNTECH, INC.**

**By:** _____
**Title:** _____

**MUNICIPAL EMPLOYEES RETIREMENT SYSTEM OF LOUISIANA**

**By:** _____
**Title:** _____

# EXHIBIT "B"