| | |
|---|---|
| GORDON SILVER | HELLER, DRAPER, PATRICK, HORN & DABNEY, L.L.C. |
| THOMAS J. SALERNO, ESQ. | WILLIAM H. PATRICK, III, ESQ. |
| Arizona Bar No.: 007492 | Louisiana Bar No. 10359 (*Admitted Pro Hac*) |
| Email: tsalerno@gordonsilver.com | E-mail: wpatrick@hellerdraper.com |
| TERESA M. PILATOWICZ, ESQ. | TRISTAN E. MANTHEY, ESQ. |
| Arizona Bar No.: 024447 | Louisiana Bar No. 24539 (*Admitted Pro Hac*) |
| Email: tpilatowicz@gordonsilver.com | E-mail: tmanthey@hellerdraper.com |
| One East Washington Street, Suite 400 | 650 Poydras St., Suite 2500 |
| Phoenix, Arizona 85004 | New Orleans, Louisiana 70130 |
| Telephone: (602) 256-0400 | Telephone: (504) 299-3300 |
| Facsimile: (602) 256-0345 | Facsimile: (504) 299-3399 |

TALITHA GRAY KOZLOWSKI
Nevada Bar No. 9040 (*Admitted Pro Hac*)
Email: tgray@gordonsilver.com
3960 Howard Hughes Parkway, 9th Floor
Las Vegas, Nevada 89169
Telephone: (702) 796-5555
Facsimile: (702) 369-2666

*Attorneys for Debtor*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| In re:<br><br>SNTECH, INC., a Delaware corporation,<br><br>Debtor. | Case No. 2:14-BK-17914-EPB<br>Chapter 11 |

**EMERGENCY MOTION FOR ADDITIONAL DEBTOR-IN-POSSESSION FINANCING IN ACCORDANCE WITH THE TERMS OF THE INTERIM DIP FINANCING ORDER [ECF NO. 80]**

SNTech, Inc., debtor and debtor-in-possession, hereby respectfully submit its emergency motion (the "Motion") seeking authorization to obtain additional emergency financing of $60,000 (the "Loan Supplement") from Municipal Employees Retirement System of Louisiana ("Lender") and to amend Section F(a) of the *Interim Order (1) Authorizing Debtor to Obtain Post-Petition Financing, (2) Granting Liens and Superpriority Administrative Expense, (3) Authorizing Use of Cash Collateral, and (4) Setting and Prescribing the Form and Manner of Notice for a Final Hearing* [ECF No. 80] (the "Interim DIP Order") to provide that the sum of $301,628 shall be amended and replaced with $361,628 to account for the Loan Supplement.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

105013-002/2529531_2.doc

Case 2:14-bk-17914-EPB    Doc 115    Filed 01/05/15    Entered 01/05/15 12:50:10    Desc
Main Document    Page 1 of 8

The proceeds of the Loan Supplement (being $60,000) will be used by Debtor to purchase equipment from its wholly-owned subsidiary SNTech, Co., Ltd. ("SNTech Korea"), who will then use those sale proceeds to pay the outstanding wages and severance totaling $60,000 for the months of September, October, November, and December for the nine current and former employees (the "Korean Employees") that have sought legal recourse.[1]

***Without the payment of the Korean Employees' wage claims before Friday, January 9, 2015, SNTech Korea and its managers, Mr. Jong Won and Mr. Shannon Bard, Debtor's CEO, will face criminal penalties, including fines, a criminal record, and potentially imprisonment. Given the gravity of the situation, approval of such funding cannot be delayed until the final DIP Financing hearing on January 20, 2015.***

This Motion is made and based on the points and authorities provided herein, the pleadings, papers, and other records on file with the clerk of the above-captioned Court, the supporting declaration of Shannon Bard (the "Bard Declaration"), judicial notice of which is hereby requested, and the argument of counsel entertained by the Court at the time of the hearing of the Motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.
INTRODUCTION**

Pursuant to the Interim DIP Order, Debtor has been authorized to obtain funding from Lender, on a superpriority basis, of up to $301,628.00, to fund critical payroll, rent, and other operating expenses of Debtor, SNTech Korea, and SNTech Thailand on or before January 16, 2015. See Interim DIP Order, ECF No. 80, §§ F,[2] 1 and 3. The final DIP Financing hearing has

---

[1] The sum of $60,000 does not satisfy the outstanding wage obligations owed to SNTech Korea's manager, Jong Won, who is owed $16,000, or one employee that is currently on maternity leave and who may be paid when she returns to work. These amounts will be paid after the final approval of the DIP Financing on January 20, 2015.

[2] Section F(a) of the Interim DIP Order provides as follows:

(a) Good cause has been shown for the entry of this Order. The Debtor's use of the funds advanced pursuant to this Order, the DIP Credit Facility, and the Approved Budget was and is immediate and critical. Entry of this Order will minimize any diminution in the value of the bankruptcy estate, and is in the best interests of the Debtor, its creditors, and the bankruptcy estate. The terms of the financing authorized hereby are fair and reasonable, reflect the Debtor's exercise of prudent business judgment, and

Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

105013-002/2529531_2.doc

2

Case 2:14-bk-17914-EPB    Doc 115    Filed 01/05/15    Entered 01/05/15 12:50:10    Desc
Main Document    Page 2 of 8

been scheduled for January 20, 2015. Debtor submits that it will be immediately and irreparably harmed if an additional $60,000 is not added to the $301,628, raising this amount to $361,628. Importantly, Debtor is not seeking to change the total amount of the DIP Financing; rather, Debtor is simply seeking authorization for MERS to fund an additional $60,000 that is included in the DIP Budget immediately, rather than after the final DIP Financing hearing.

Without the *immediate* payment (being no later than January 9, 2015) of the Korean Employees' outstanding wages, Mr. Bard, Debtor's CEO, Mr. Won, SNTech Korea's manager, and SNTech Korea will face criminal penalties, including criminal records, criminal fines, and potentially imprisonment.[3] Under Korean law, the criminal fines will likely be assessed against not only SNTech Korea, but also Mssrs. Bard and Won, personally,[4] thereby subjecting their personal assets to attachment. Beyond the potentially irreparable injury to Messrs. Bard and Won, who are necessary to effectuating the contemplated sale process and maximizing the estate's value, under Korean law, criminal fines will likely be assessed against SNTech Korea

---

(continued)

are supported by reasonably equivalent value and fair consideration. The Debtor and its estates would suffer immediate and irreparable harm unless the Court authorizes the Debtor:

• to obtain emergency funding from the Lender, on superpriority basis, up to $301,628.00, pursuant to the Approved Budget, prior to a final hearing on the Motion to fund critical payroll, rent and other operating expenses of the Debtor and its Korean and Thailand subsidiaries (SNTech Co., Ltd. and Thai SNTech Co., Ltd. respectively).

[3] See Bard Declaration ¶¶ 10-11; see also Korean Labor Standard Act, Law No. 5309, Mar. 13, 1997 (English translation by the Korean Ministry of Labor) at Article 42 (providing that wages shall be paid more than once per month on a fixed day) and Article 112 (providing that "a person who has violated the provisions of Article…42…shall be punished by imprisonment for less than three years or by a fine not exceeding twenty million won."). For ease of reference, a copy of the cited excerpts is attached hereto as Exhibit "B."

[4] See Bard Declaration ¶ 10; see also Korean Labor Standard Act, Law No. 5309, Mar. 13, 1997 (English translation by the Korean Ministry of Labor) at Article 116 ("If a person who has committed an act in contravention of this Act is a proxy, servant or other hired person who acts on behalf of a business owner in relation to matters regarding workers at the business concerned, the said business owner shall likewise be subject to punishment by a fine as provided in each corresponding Article, unless the business owner (a representative of a business if a business owner is an incorporation, or a legal representative if a business owner is a minor or an incompetent who does not have same ability as that of adult in terms of business management) had previously taken adequate measures to prevent violation. A business owner shall also be punished in the same manner as an actual offender, if a business owner does not provide adequate measures to prevent violation even though he recognized the possible violation, or he has failed to provide necessary corrective measures once he knew of the violation, or he has instigated such violation to be performed.").

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

105013-002/2529531_2.doc

3

Case 2:14-bk-17914-EPB    Doc 115    Filed 01/05/15    Entered 01/05/15 12:50:10    Desc
Main Document    Page 3 of 8

and its assets will be liened through red-tagging and sold to satisfy the fines. See Bard Declaration ¶¶ 10 and 11.

In an effort to minimize the impact on Debtor's creditors and to maximize the value of the estate, Debtor seeks authorization to purchase, in accordance with the Purchase Agreement attached hereto as **Exhibit "A,"** the assets identified therein having a value of at least $60,000 from SNTech Korea, thereby increasing the estate's value by the same amount that is being funded on a superpriority basis. It would be improvident for Debtor and its estate to continue to obtain superpriority loans from MERS in order to lend money on an unsecured basis to SNTech Korea when Debtor can purchase valuable equipment from SNTech Korea and thereby increase the value of the estate and increase the sales price achieved through the sale process.

## II.
## PERTINENT FACTS[5]

1. In October 2014, nine Korean Employees filed a complaint with the Central Region Employment Board, Anyang Branch (the "Employment Board") for unpaid wages (the "Complaint"). See Bard Declaration ¶ 5.

2. As of today, five of the nine employees that filed the Complaint have been terminated. The five terminated employees are owed four months' salary, as well as severance payments that are required to be paid to each terminated employee under Korean law, while the remaining four employees that are party to the Complaint are owed two months' salary,[6] for a total of $60,000 (a rounded number has been used to account for minor fluxuations in conversion rates) (the "Korean Wage Obligations"). See id. ¶ 6.

3. Mr. Won, SNTech Korea's manager, has appeared before the Employment Board on several occasions to explain the status of the companies, Debtor's bankruptcy filing, and the fact that the payment of the Korean Wage Obligations is included in the final DIP Budget set for hearing on January 20, 2015. See id. ¶ 7.

---

[5] In the interest of brevity, the legal and factual analysis provided in the Initial DIP Motion [ECF No. 24] and the supporting declaration of Shannon Bard [ECF No. 25] is incorporated herein by this reference.

[6] Under the Interim DIP Order, the current employees received two months' outstanding salary.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

105013-002/2529531_2.doc

4

4.      Notwithstanding Mr. Won's efforts to obtain additional time, the Employment Board has recently advised that if the Korean Wage Obligation is not paid and the Korean Employees do not withdraw the Complaint by January 9, 2015, the Employment Board will be referring the matter to the Prosecutor's Office. See id. ¶ 8.

5.      After the Complaint is referred to the Prosecutor's Office, the subsequent payment of the Korean Wage Obligations will not alter the criminal prosecution. That is, if Debtor is required to wait until after the final hearing on the DIP Financing scheduled for January 20, 2015, to pay the Korean Wage Obligations, SNTech Korea, Mr. Won, and Mr. Bard will continue to be subject to the criminal indictment and resulting penalties notwithstanding the subsequent payment of the Korean Wage Obligations. See id. ¶ 9.

### III.
### LEGAL ARGUMENT

**A.      The Loan Supplement Is Necessary to Avoid Immediate and Irreparable Harm.**

In the interest of brevity, Debtor incorporates the Section 364(d)(1) analysis set forth in the initial DIP Motion [ECF No. 24 ] and the evidentiary support provided in Mr. Bard's declaration [ECF No. 25] as though it were fully set forth herein. The remaining question is whether the Loan Supplement is necessary to avoid immediate and irreparable harm to the estate. The answer is unequivocally yes. Without the immediate satisfaction of the Korean Wage Obligations, SNTech Korea and its director and manager, Mssrs. Bard and Won, will face criminal indictment and penalties, which will likely result in criminal charges and records and criminal fines that will be satisfied by liening and executing on SNTech Korea's assets, as well as Mr. Won's personal assets, and could result in imprisonment. Beyond the deleterious effect on Mr. Won and Mr. Bard, who are critical to maximizing the value achieved through the sale process, certain of the equipment that is necessary to manufacturing the Electronically Commutated Motors ("ECM") used in the HVAC and Pump markets will be liened and sold to satisfy the criminal fines.[7]

---

[7] As discussed in Mr. Bard's declaration filed in support of the Bid Procedures Motion [ECF No. 66], SNTech Korea manufactures essentially all of the high efficiency ECMs sold to the HVAC market and a portion of the ECMs sold to the Pump market. In addition, SNTech Korea provides engineering services and support for customer

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

105013-002/2529531_2.doc

5

Case 2:14-bk-17914-EPB    Doc 115    Filed 01/05/15    Entered 01/05/15 12:50:10    Desc
Main Document    Page 5 of 8

Provided the foregoing, there can be no question that Debtor will suffer immediate and irreparable harm if the Korean Wage Obligations are not immediately paid. However, rather than continue to fund unsecured loans to SNTech Korea, Debtor seeks to obtain the Supplemental Loan from MERS in order to purchase equipment at the fair market value from SNTech Korea, thereby allowing SNTech Korea to utilize the proceeds of the equipment sales to pay the Korean Wage Obligations. This structure not only resolves the immediate need to fund the Korean Wage Obligations, but it additionally increases the value of Debtor's estate and facilitates the contemplated sale process, thereby benefiting all of Debtor's creditors.

**B.    To the Extent Necessary, Debtor Seeks Authorization to Purchase Assets From SNTech Korea.**

Debtor submits that the purchase of assets from SNTech Korea is an ordinary course transaction based on the undisputed evidentiary record establishing that Debtor has funded, directly or indirectly, the acquisition of the assets owned by SNTech Korea. However, to the extent that the transaction would not be considered an ordinary course transaction, Debtor seeks approval pursuant to Section 363(b).

Section 363(b) of the Bankruptcy Code permits a debtor in possession, after notice and a hearing, to "use, sell or lease, other than in the ordinary course of business, property of the estate. . . ." 11 U.S.C. § 363(b). Courts have repeatedly held that a bankruptcy court should authorize a debtor to use or sell estate property under Section 363(b) whenever the request is supported by some rational, articulated business purpose. See, e.g., Stephens Indus., Inc. v. McClung, 789 F.2d 386, 390 (6th Cir. 1986); In re Continental Air Lines, Inc., 780 F.2d 1223, 1226 (5th Cir. 1986); In re Lionel Corp., 722 F.2d 1063, 1070 (2d Cir. 1983); Walter v. Sunwest Bank (In re Walter), 83 B.R. 14, 19-20 (B.A.P. 9th Cir. 1987). Indeed, the Bankruptcy Appellate Panel for the Ninth Circuit in In re Walter explained:

---

(continued)
qualification, testing, UL approval and product development. The primary manufacturing equipment for Debtor's HVAC product is located in Korea, and housed in a manufacturing facility leased by SNTech Korea. This same manufacturing facility also houses IMPOWER-brand manufacturing equipment that is owned by Debtor and is used to manufacture 48-frame ECMs for Debtor's Pump business. A list of the manufacturing assets located in Korea is attached to the declaration filed at ECF No. 66 as Exhibit "A." All of the assets shown on the list are currently owned by SNTech Korea, except the Impower-brand equipment. The yellow highlights identify equipment that has been "red-tagged" by a judgment creditor for sale at an upcoming public auction. See ECF No. 66 ¶ 7 and Ex. "A."

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

105013-002/2529531_2.doc

> [T]here must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business. . . . Whether the proffered business justification is sufficient depends on the case. As the Second Circuit held in Lionel, the bankruptcy judge should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike.

Id. (quoting In re Continental Air Lines, Inc., 780 F.2d at 1226); see also In re 240 N. Brand Partners, Ltd., 200 B.R. 653, 659 (B.A.P. 9th Cir. 1996). In conducting a business justification analysis, "the bankruptcy court should presume that the debtor-in-possession acted prudently, on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the bankruptcy estate." In re Pomona Valley Med. Group, Inc., 476 F.3d 665, 670 (9th Cir. 2007). If a debtor's decisions satisfy the business judgment rule, then the transaction in question should be approved under Section 363(b).

In addition, Section 105(a) grants the Court general equitable powers and authorizes the Court to "issue any order, process, or judgment that is necessary to carry out the provisions of this title." 11 U.S.C. § 105(a). Thus, construing Sections 363(b) and 105(a) together, "the Bankruptcy Code does not contemplate every business crisis that could arise in a bankruptcy case, and this Court is of the opinion that Congress intended that the Code accommodate the economic realities faced by debtors in reorganization cases." In re Tropical Sportswear Int'l Corp., 320 B.R. 15, 20 (Bankr. M.D. Fla. 2005).

Here, Debtor is seeking to purchase equipment that will increase the value of its estate and facilitate the contemplated sale process while simultaneously satisfying outstanding wage obligations, precluding the criminal indictment of Debtor and SNTech Korea's director and manager, the imposition of criminal fines that would be satisfied through the managers' and subsidiaries' assets, and potentially the incarceration of SNTech Korea's manager. As such, Debtor submits that the purchase of SNTech Korea's equipment having a value of $60,000 more than amply satisfies Section 363(b)'s requirement that the transaction be supported by a valid business justification.

. . .

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

105013-002/2529531_2.doc

# IV.
# CONCLUSION

Based on the foregoing, Debtor respectfully requests entry of an order amending Section F the Interim DIP Order to increase the amount set forth therein from $301,628 to $361,628, thereby enabling Debtor to obtain additional financing of $60,000 from MERS to purchase equipment from SNTech Korea, which sale proceeds will be used by SNTech Korea to satisfy the outstanding Korean Wage Obligations. Debtor seeks such further and other relief as the Court deems just and proper.

DATED this 5th day of January, 2015.

GORDON SILVER

/s/ Teresa M. Pilatowicz
THOMAS J. SALERNO, ESQ.
TALITHA GRAY KOZLOWSKI, ESQ.
(*Admitted Pro Hac*)
TERESA M. PILATOWICZ, ESQ.
One East Washington Street, Suite 400
Phoenix, Arizona 85004

and

HELLER, DRAPER, PATRICK, HORN & DABNEY, L.L.C.
WILLIAM H. PATRICK, III, ESQ.
(*Admitted Pro Hac*)
TRISTAN E. MANTHEY, ESQ.
(*Admitted Pro Hac*)
650 Poydras Street, Suite 2500
New Orleans, Louisiana 70130-6103
*Attorneys for Debtor*

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

105013-002/2529531_2.doc