# EXHIBIT A

# EXHIBIT A

# TERM SHEET FOR POST PETITION, DEBTOR-IN-POSSESSION FINANCING (Final)

## TO

SNTECH, INC., a Delaware corporation ("**SNT**," "**Borrower**" or "**Debtor**")

## FROM

MUNICIPAL EMPLOYEES RETIREMENT SYSTEM OF LOUISIANA ("**MERS**"), as lender and as collateral agent and administrative agent
(together with any participants, successors and assigns, the "**Lender**")

## January 25, 2015

This Term Sheet for Post-Petition, Debtor-in-Possession Financing ("**Term Sheet**") is binding upon entry of a Final Order (1) Authorizing Debtor to Obtain Post-Petition Financing, (2) Granting Liens and Superpriority Administrative Expense, and (3) Authorizing Use of Cash Collateral (the "**Final Order**"), containing only terms and conditions satisfactory to Lender. This Term Sheet is the only agreement between Debtor and Lender with respect to the matters stated therein, and it is subject to the conditions stated herein and in the Final Order.

**THE LENDER DOES NOT WAIVE, AND EXPRESSLY RESERVES, ALL DEFAULTS UNDER THE EXISTING PRE-PETITION DOCUMENTATION AND ALL RIGHTS TO ENFORCE THE TERMS OF SUCH DOCUMENTATION, UNLESS OTHERWISE SPECIFICALLY PROVIDED HEREIN.**

| | |
|---|---|
| Borrower: | Debtor |
| Commitment Amount: | A debtor-in-possession credit facility (in total, the "**DIP Credit Facility**") to Debtor, upon the conditions set forth below to provide funding in accordance with the Approved Budget (defined below) for the period from the Petition Date through March 13, 2015, for a total amount of up to $1,400,000.00 (the "**DIP Availability**"), pursuant only to the Approved Budget (as defined hereinafter) and subject to certain exceptions noted below. The DIP Credit Facility includes all reasonable legal fees, costs, and related expenses incurred by Lender in any way related to the Debtor or its bankruptcy case, or in connection with financing the Debtor during its bankruptcy proceeding. The Debtor shall be limited to weekly draws against the amount established under the terms of the Approved Budget. Any advances under the DIP Credit Facility are expressly conditioned upon the entry of the Final Order in a form and substance acceptable to the Lender, approving the Term Sheet and the protections to Lender provided herein. |

Lender may sell or assign participations in the DIP Credit Facility.

For purposes of this Term Sheet, "DIP Obligations" means all funds advanced by Lender pursuant to the Order, the Term Sheet, and the Approved Budget, and all funds payable to Lender as a result of this Order, together with all of Debtor's other obligations under the Final Order and the Term Sheet, including the Debtor's obligation to pay Lender's Debtor-related fees and expenses. "Approved Budget" shall mean a budget as defined on the section of the Term Sheet entitled "Budget Process."

Lender has no obligation to continue to advance funds under this Term Sheet if any of the following occurs: (i) its total lending to Debtor, including interest, Lender's attorneys' fees, and expenses, since November 1, 2014, meets or exceeds $1,350,000.00, unless Lender is given a Superpriority Claim (defined below) by the Bankruptcy Court for all funds advanced in excess of that amount, and Lender thereafter consents to advance funds over that amount; (ii) its total lending to Debtor, including Lender's attorneys' fees and expenses (but not interest) since November 1, 2014, meets or exceeds $1,475,000.00; or (iii) the occurrence of any other event or condition that allows Lender to cease advancing funds under the Term Sheet as stated herein or in the Final Order.

Use of Proceeds: After the Final Order is entered, to (i) extinguish advances made by Lender under that certain Senior Secured Promissory Note dated November 10, 2014 (the "DIP Advance Loan") in anticipation of the filing of the case, which provided the funding that allowed the Debtor to preserve its assets and file its petition for relief, (ii) fund operating expenses of the Debtor in accordance with the Approved Budget, (iii) provide financing to facilitate the orderly sale of the Debtor's assets, including protecting overseas assets from seizure and/or sale; (iv) purchase assets owned by SNTech Co., Ltd. and Thai SNTech Co., Ltd., subject to further Lender approval, all as reflected in the Approved Budget; and (v) pay Lender's reasonable Debtor-related legal fees and expenses.

Debtor shall use any funds advanced under the Term Sheet only for the purposes and in the amounts set forth in the Approved Budget.

No portion of the DIP Credit Facility, the Collateral (as defined below), including any cash collateral, are to be used by any party or professional to:

|   |   |
|---|---|
|   | (i) challenge the validity, perfection, priority, extent or enforceability of the DIP Obligations or the liens on or security interests in the assets of the Debtor securing the DIP Obligations, |
|   | (ii) pursue through motion, complaint, or otherwise any claims or causes of action against the Lender, or |
|   | (iii) pursue through motion, complaint, or otherwise any litigation against the Lender or its nominee in connection with any other claim or cause of action. |
| Term: | All DIP Obligations shall mature and all DIP Obligations shall be immediately due and payable in full, and the Lender shall have no further obligation to make advances under the Term Sheet and, except for the Carve Out (defined below), the Debtor shall have no further use of cash collateral or any funds previously advanced thereunder, upon the earliest to occur of the following events, at Lender's sole election (any of them a "Maturity Date"): |
|   | (a) the occurrence of a Default or an Event of Default (as defined herein) under the Term Sheet or the Final Order; |
|   | (b) the indefeasible payment in full of the DIP Obligations owing to the Lender; |
|   | (c) the closing of a sale of Debtor or substantially all of Debtor's marketable assets to any purchaser; or |
|   | (d) March 13, 2015. |
|   | Upon the expiration of the Term, all DIP Obligations shall be due and payable in full. The DIP Obligations must be paid before the payment of any other administrative expenses of the estate or liens on the Collateral (as defined in the Final Order), subject to the Carve Out. |
| Collateral: | Subject to the Carve Out, pursuant to Sections 364(c) and (d), the DIP Obligations shall be secured by automatically perfected first priority, priming, and post-petition security interests in and liens ("Liens") and a Superpriority Claim (defined below) on all of the properties and assets of the Debtor, real and personal, including, but not limited to, the "Collateral," all as more particularly described in the Final Order. (The term "Collateral" has the definition stated in the |

Final Order.) Upon entry of the Final Order, the Liens on the Collateral shall also secure the Pre-Petition Lender Debt (defined below). Any Lien on the Collateral granted by the Final Order to secure the Pre-Petition Lender Debt shall not prime any pre-petition valid, enforceable, non-avoidable liens on the Collateral held by any other pre-petition secured creditor for its pre-petition claims that are not otherwise primed by the Lender Liens.

The term "Carve Out" shall mean (a) allowed administrative expenses pursuant to 28 U.S.C. § 1930(a)(6), and (b) allowed fees and expenses incurred by Court-approved attorneys retained pursuant to sections 327, 328, and 1103 of the Bankruptcy Code and as provided for in the Approved Budget; provided, however, for each advance by the Lender under the DIP Credit Facility, the Carve-Out for professional fees shall be reduced (dollar for dollar) by the amount of legal fees and expenses funded pursuant to the amounts set forth in the Approved Budget for the prior period corresponding to such advance provided however that any budgeted but unfunded amounts for professional fees in a particular period may be used in any other period of the Approved Budget; provided, further that the Carve Out shall continue to apply to funds advanced to the Debtor for purposes of paying professional fees under the Approved Budget, but which have not yet been disbursed notwithstanding any termination of the DIP Credit Facility. Nothing herein shall be construed to affect the amount of fees or expenses to which any party may otherwise be entitled, and provided further that nothing herein shall be construed to impair the ability of any party to object to any of the fees, expenses, reimbursement, or compensation described above. Following an Event of Default, in addition to advancing the professional fees and expenses incurred through the end of the week of the occurrence of the Event of Default and otherwise payable pursuant to the Approved Budget, the Lender shall advance up to $25,000.00 (the "Default Advance") first, for payment of professional fees incurred by Court-approved attorneys retained in the chapter 11 case pursuant to sections 327, 328, and 1103 of the Bankruptcy Code after such Event of Default, and then, if the case is converted to one under chapter 7, for the payment of chapter 7 fees and/or expenses that may become due to any chapter 7 trustee, provided that, with respect to the payment of any such chapter 11 fees and expenses, only to the extent that amounts previously advanced by Lender for the purpose of paying budgeted legal or professional fees and expenses together with any retainers on hand, are insufficient to satisfy the allowed amount of such pre- and post-default fees and

expenses. In event the Chapter 11 Case is dismissed or converted, or the jurisdiction of the Bankruptcy Court is otherwise terminated, amounts which were paid pursuant to a Carve Out shall not be subject to disgorgement for the benefit of the Lender

In addition, other than the Carve Out and the Default Advance, notwithstanding anything to the contrary contained in the Interim Order and Final Order, and irrespective of existing unexpended retainers, in no event shall Lender be obligated to fund any budgeted expense, including any claim to surcharge the collateral under 11 U.S.C. § 506(c) and including legal or other professional fees except at such time and in such amounts as are set forth in the Approved Budget, provided that in no event shall Lender be obligated to fund any expense, including the Carve Out, if doing so would, when combined with the amounts advanced by the Lender under the DIP Credit Facility, exceed the limitations on funding stated herein or in the Final Order.

In partial consideration of the Carve Out, except as may otherwise be provided in (a) in the Final Order for funds necessary to pay expenses shown on the Approved Budget which Lender does not advance funds to pay; or (b) in any order of the Court approving any sale of Collateral, acceptable to Lender in its sole discretion, the Debtor on behalf of itself and its bankruptcy estate waives (i) any right or claim to surcharge the Lender or Collateral pursuant to 11 U.S.C. § 506(c) or otherwise and (ii) the "equities of the case" exception in Section 552(b) of the Bankruptcy Code.

<u>Superpriority Claims:</u> The Lender shall also receive and be entitled, pursuant to Section 364(c)(1) of the Bankruptcy Code, to a super-priority administrative expense claim in the amount of the DIP Obligations (the "<u>Superpriority Claim</u>") with priority over all other costs and expenses of the kinds specified in, or ordered pursuant to, sections 105, 326, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1114 or any other provisions of the Bankruptcy Code, subject only to the Carve Out, any section 506(c) liens or charges for funds necessary to pay expenses shown on the Approved Budget which Lender does not advance funds to pay, and the Default Advance..

<u>Application of Proceeds from Asset Sales:</u> The net cash proceeds of Bankruptcy Court-authorized asset sales shall be used first for indefeasible repayment in full of the DIP Obligations, with the balance to be distributed in accordance with orders of the Court, following notice and a hearing.

| | |
|---|---|
| <u>Interest Rate:</u> | Interest shall accrue on all funds advanced under the DIP Credit Facility at the interest rate of fifteen percent (15%) per annum and, following the occurrence of an Event of Default (defined below), at twenty-one percent (21%) per annum. |
| <u>Fees:</u> | Debtor shall pay to Lender a commitment fee in an amount equal to three (3%) percent of the DIP Availability (the "<u>Commitment Fee</u>"). The Commitment Fee due on funds approved by the Interim Order was earned and paid upon the entry of the Interim Order. The Commitment Fee due on new funds approved by the Final Order shall be earned and paid upon the entry of the Final Order.<br><br>Debtor does not owe monthly fees to Lender or other fees other than the Commitment Fee. |
| <u>Expenses:</u> | All costs incurred by the Lender in any way related to the Debtor or associated with the DIP Credit Facility or the bankruptcy case or planning related to them, including, but not limited to, the reasonable fees and expenses of its financial advisor, Meketa Investment Group, primary counsel (Kean Miller LLP), local counsel (Sherman & Howard), counsel retained in Korea and Thailand, and all related costs and all costs and fees associated with any appraisal, report, or review (collectively, "<u>Lender Expenses</u>") are DIP Obligations that must be paid by the Debtor or its estate. Lender Expenses are chargeable to the DIP Credit Facility (whether or not reflected in the Approved Budget) after three (3) business days' notice to Debtor, the U.S. Trustee, CapFlow, and any official committee formed in the case ("<u>Notice Parties</u>"). At Lender's option, the Lender Expenses may be added to the balance of the DIP Obligations owed to Lender to be paid on the Maturity Date or paid by the Debtor through the DIP Credit Facility. In the event any of the Notice Parties have an objection to the compensation or reimbursement sought for any Lender Expenses and such Notice Party is unable to reach an agreement with the Lender with respect thereto, any undisputed amounts may be paid through the DIP Credit Facility, or at Lender's option, paid on the Maturity Date, and, with respect to any disputed amounts, Lender may file a motion for expedited hearing in the Bankruptcy Court to resolve any dispute and any approved disputed amounts may be paid through the DIP Credit Facility, or at Lender's option, paid on the Maturity Date. Lender Expenses paid (or added to the balance of the DIP Obligations) without objection, or allowed by this Court over an objection made pursuant to this paragraph, shall not be subject to further review or challenge, |

constitute DIP Obligations, are final, are not subject to further review, and are fully protected under Section 364(e) of the Bankruptcy Code. To the extent Lender internally provides services otherwise chargeable to the Debtor as Lender Expenses, Debtor will reimburse Lender for these services at market rates.

<u>Conditions to Each Disbursement Under the DIP Credit Facility:</u>

The following conditions precedent to each draw on the DIP Credit Facility shall be met; otherwise Lender shall have no obligation to make any such advances:

(i) The budget showing projected weekly cash receipts, cash disbursements and other financial information required by the Lender for each week from the Petition Date, as updated, shall have been reviewed and approved by the Lender, in writing (and upon such approval shall constitute an Approved Budget);

(ii) The Final Order shall have been entered by the Bankruptcy Court, after notice given and a hearing conducted in accordance with Rule 4001(c) of the Federal Rules of Bankruptcy Procedure (and any applicable local bankruptcy rules), approving the Term Sheet authorizing and approving the transactions contemplated by the Term Sheet and finding that the Lender is extending credit to the Debtor in good faith within the meaning of Bankruptcy Code section 364(e), which Final Order shall

(a) approve the payment by the Debtor of all of the fees and expense reimbursements provided for herein,

(b) otherwise be in form and substance satisfactory to the Lender;

(c) be in full force and effect and shall not have been stayed, reversed, vacated, subject to appeal, or otherwise modified in a manner adverse to the Lender;

(d) provide for the validity and priority of the Liens and the Superpriority Claim over all of the Debtor's assets to secure any and all DIP Obligations, including payment of the DIP Advance Loan upon entry of the Final Order,

which shall be an integral part of the Final Order and not subject to further review after the entry of the Final Order.

The Final Order shall reflect that: (i) the Collateral shall secure the Pre-Petition Lender Debt, but any new liens granted by the Final Order to secure the Pre-Petition Lender Debt shall not prime any valid, enforceable, non-avoidable pre- petition liens on the Collateral in favor of other secured creditors for their pre-petition claims not otherwise primed by Lender's pre-petition liens on the Collateral; (ii) Lender's pre-petition indebtedness (the "Pre-Petition Lender Debt") shall constitute allowed secured claims (without the necessity of filing proofs of claim) in the principal amount of $3,330,082.00, together with interest through December 4, 2014 in the amount of $738,906.96, with interest thereafter accruing on the principal balance at $1,368.53 per diem, plus attorneys' fees and expenses incurred prior to November 1, 2014 in the amount of $23,462.82, against Debtor and its estate, and shall not be subject to any contest, objection, recoupment, defense, counterclaim, offset, claim of subordination, claim of re-characterization, claim of avoidance of any nature, attack or challenge under the Bankruptcy Code, other applicable non-bankruptcy law, or otherwise; (iii) Lender's pre-petition liens shall be deemed legal, valid, binding, enforceable, duly perfected, not subject to defense, counterclaim, offset of any kind, or subordination, and such liens are otherwise unavoidable; and (iv) Lender, the Pre-Petition Lender Debt, Lender's pre-petition loan documents, and Lender's pre-petition liens shall not be subject to any other or further claims, counterclaims, causes of action, lawsuits, or challenges by any party-in-interest or any successor thereto (including, without limitation, any chapter 7 or 11 trustee appointed by or elected for Debtor), and Debtor, all other parties and all other persons shall be forever barred and enjoined from taking any of the actions or asserting any of

the claims or defenses set forth in the foregoing clauses (i), (ii), (iii), and (iv). Nothing in the Final Order vests or confers on any person, including any committee appointed in this case, standing or authority to pursue any cause of action belonging to Debtor or its estates, including, without limitation, any claims or defenses with respect to Lender's pre-petition liens or the Pre-Petition Lender Debt;

(e) Payment of all costs, fees, and expenses owing to the Lender, which shall be funded from the DIP Credit Facility;

(f) Confirmation of sufficient insurance coverage for all property of Debtor, general liability insurance and other forms of insurance in amounts with deductibles reasonably satisfactory to the Lender;

(g) There is no Event of Default or event which, with the giving of notice or lapse of time or both would constitute an Event of Default, and no material adverse change of condition of the Debtor;

(h) Lender shall have received all information reasonably requested from Debtor within a reasonable time, including timely reports required by this Term Sheet and information about its and its subsidiaries assets and liabilities; or

(i) The Final Order shall provide for a waiver of any and all claims of the Debtor, its estate, or any chapter 7 or chapter 11 trustee against Lender, including claims under Chapter V of the Bankruptcy Code.

| | |
|---|---|
| <u>Representations and Warranties:</u> | The Debtor represents and warrants to Lender that it has full corporate power and authority, subject to entry of the Final Order, to enter into the Term Sheet and to perform all transactions provided herein and to grant security interests in the Collateral, with any covenants against such borrowing in any loan documentation of other creditors superseded by the Final Order, and the DIP Obligations are binding and enforceable upon entry of the Final Order. The Debtor further |

represents and warrants to Lender that the Final Order shall contain a representation and stipulation acknowledging the validity and priority of Lender's pre-petition security position on Debtor's pre-petition assets and its Liens on the Collateral to secure all debt to Lender. Liens granted upon entry of the Final Order to secure the Pre-Petition Lender Debt shall not prime any valid, enforceable, non-avoidable pre-petition liens on the Collateral in favor of other secured creditors for their pre-petition claims not otherwise primed by Lender's pre-petition liens on the Collateral.

Covenants:   Debtor hereby covenants that:

(a) Debtor's actual disbursements for any period on the Approved Budget are not more than one hundred ten percent (110%) of the projected disbursements for such period as set forth in the then-current Approved Budget. The foregoing calculation shall be tested weekly beginning one (1) week following the Petition Date.

(b) Debtor shall not file a motion to sell all or substantially all of the assets of the estate, including the Collateral, or any reorganization or liquidation plan which does not provide for full and indefeasible payment of the DIP Obligations and a release of all claims and causes of action held by or assertable by the Debtor against the Lender on account of the Term Sheet.

Sale and/or Orderly Liquidation of Debtor's Assets:   Debtor agrees that it will continue to use best efforts to conduct a going concern sale of its assets in accordance with the Bidding Procedures Order entered January 9, 2015.

If the sale of substantially all of Debtor's assets fails to close by March 12, 2015 (or a later date either agreed to by Lender in writing, or set by the Bankruptcy Court after notice and a hearing), Lender may require the Debtor to sell the Collateral to Lender or its nominee free and clear of all liens, claims, and interests pursuant to Section 363 of the Bankruptcy Code. If Lender exercises its right to require the Debtor to sell substantially all of the Collateral (but specifically excluding the Debtor's accounts receivable) to Lender or its nominee, the purchase price shall be an amount equal to (i) a credit bid of all amounts owed under the DIP Credit Facility and any other DIP Obligations, plus (ii) cash in the amount of unpaid administrative expenses not otherwise payable pursuant to the Approved Budget, in an amount not to exceed $50,000.00 in

the aggregate, paid to the estate or as directed by order of the Court, plus (iii) the Default Advance, plus (iv) a cash payment to the estate of $25,000.00 for the benefit of unsecured creditors (the "Back Up Transaction"). The asset purchase agreement, other agreements, closing date, and all pleadings related to the Back Up Transaction including the form of order approving the sale of assets pursuant to the Back Up Transaction shall be in a form and substance acceptable to Lender.

Financial Reporting: The Debtor shall provide the Lender with the following financial reporting:

(a) monthly financial statements and operating reports, budget and operating plans for each period, with all financial statements of Debtor prepared on a consolidated basis;

(b) on an as-requested basis all other information reasonably requested by the Lender.

(c) copies of all pleadings, motions, applications, judicial information and other documents filed by or on behalf of the Debtor with the Bankruptcy Court or the U.S. Trustee in the Chapter 11 Case, or distributed by or on behalf of the Debtor to any official committee in any Chapter 11 Case;

(d) no later than weekly, an update of the Approved Budget (which shall be re-forecast to reflect any material variances), with a weekly reconciliation report comparing actual cash flows and financial results versus budgeted, in each case, in form satisfactory to Lender;

(e) notice of default in any material contracts;

(f) notice of significant changes to employment agreements; and

(g) notice of any changes in management.

Budget Process: Each week the cash flow forecast shall be subject to the Lender's review and approval, which will not be unreasonably withheld. The approved cash flow forecast shall be incorporated into a revised and restated DIP proposed budget, which will be subject to the Lender's approval. Once approved, the revised and restated DIP proposed budget shall

be an "Approved Budget" and be used to authorize disbursements under the DIP Credit Facility.

The expenses in any particular category of the Approved Budget which are authorized to be paid in a particular period of the Approved Budget can be paid in any later period of the Approved Budget, provided that the total amount of expenses paid in such category for all periods of the Approved Budget may not exceed the total amount authorized in such category for all periods in the Approved Budget, including any authorized variance. Further, notwithstanding any termination of the DIP Credit Facility or any Event of Default, any expenses authorized in the Approved Budget for periods prior to the termination of the DIP Credit Facility or Event of Default can be paid after such termination or Event of Default.

The amounts payable under the Approved Budget for professional fees and expenses can exceed the specified amounts set forth in the Approved Budget (but only with the consent of Lender) in the event of the appointment of a committee or other unexpected developments in the case, which additional amounts, if paid, will be considered part of the Approved Budget.

Events of Default:   Each of the following shall be an "Event of Default" under the Term Sheet and the DIP Credit Facility:

(a) the occurrence of any of the following events, with no cure period, without the prior written consent of Lender:

(i) Entry of an order dismissing the Chapter 11 Case or converting the Chapter 11 Case to a Chapter 7 case;

(ii) [reserved]

(iii) Entry of an order appointing an examiner with expanded powers;

(iv) Except solely to secure funds necessary to pay expenses shown on an Approved Budget which Lender does not advance, entry of an order granting any other super-priority claim or lien equal or superior to that granted to the Lender, or any lien inferior to Lender without Lender's consent, prior to full and

        indefeasible repayment of the DIP Obligations;

(v) Entry of an order reversing, vacating, or otherwise modifying, or staying the Final Order, or the Final Order shall otherwise cease to be in full force and effect;

(vi) The entry of an order granting relief from the automatic stay so as to allow a third party to proceed against any material assets of the Debtor;

(vii) The consummation of the sale of any material portion of any of the Debtor's assets without the DIP Obligations being paid in full from the sale of such assets;

(viii) a change in control of the Debtor; or

(ix) failure by the Debtor to pay any amount as and when due under the Term Sheet or the Final Order, including the failure to pay the DIP Obligations in full on the Maturity Date.

(b) the occurrence of any of the following events, if they remain uncured after the expiration of a three (3) business day notice-and-cure period (which notice shall be filed in the record of the bankruptcy case) :

(i) Debtor advancing or incurring in excess of 110% of the amounts allowed under the Approved Budget during a weekly budget period;

(ii) failure by the Debtor to perform or comply with the covenants, obligations, or deadlines contained in the Term Sheet, the Final Order, the Bidding Procedures Order, or the Sale Order;

(iii) the Debtor's breach of its obligations to comply with the covenants or breach of any representations or warranties, in the Term Sheet;

(iv) the Debtor's failure to meet its obligations

    with respect to the sale and/or orderly liquidation of the Debtor's assets as set forth above and/or in the Bidding Procedures Order;

(v) entry of any order in the Chapter 11 Case adverse to Lender's rights in and to any of the Collateral;

(vi) entry of an order modifying the Interim Order or the Final Order without Lender's consent;

(vii) Debtor's negotiation for financing from another source that provides for: (a) the priming of Lender's rights in any of the Collateral except solely to secure funds necessary to pay expenses shown on an Approved Budget which Lender does not advance funds to pay, or (b) any impairment of the sale process as stated in the Bidding Procedures Order, except with the consent of Lender in consultation with the Committee;

(viii) Material misstatements by Debtor to Lender regarding the assets, liabilities, employees, expenses, or operations of the Debtor or the Debtor's subsidiaries, including Lender's post-petition discovery of material misstatements to Lender made pre-petition;

(ix) Debtor's filing of a plan of reorganization or motion for sale of assets that does not provide for the indefeasible payment in full of all DIP Obligations and the Pre-Petition Lender Debt at closing, unless approved in writing by Lender prior to such filing; or

(x) Entry of an order for the appointment of a chapter 11 trustee in the Chapter 11 Case.

<u>Exercise of Remedies:</u> Upon the occurrence of an Event of Default,

(1) except for the Carve Out, any expenses authorized in the Approved Budget through the week of an Event of Default, and the Default Advance, the Lender has no further obligation to make advances under the DIP Credit Facility, the Term Sheet, or this Order, and the Debtor shall have no use of

       Lender's Cash Collateral or the DIP Credit Facility or any funds previously advanced thereunder;

(2)  after five (5) business days' notice, served by overnight delivery service or email upon the Debtor, the Debtor's counsel, any official committee (or its counsel), and the United States Trustee (the "<u>Required Notice</u>"), all of the indebtedness (including without limitation, the Pre-Petition Lender Debt and all DIP Obligations) shall become immediately due and payable;

(3)  after the Required Notice, the Automatic Stay of Section 362 of the Code shall be automatically and completely vacated as to the Lender without further order of the Bankruptcy Court, and

(4)  after the Required Notice, the Lender, without further notice, hearing, or approval of the Bankruptcy Court, shall be authorized, at its option, to take any and all actions, and remedies that the Lender may deem appropriate to proceed against, take possession of, protect, and realize upon the Collateral and any other property of the estate of the Debtor upon which the Lender has been or may hereafter be granted liens and security interests to obtain repayment of the indebtedness to the Lender unless the Debtor, or other party in interest, contests the occurrence of an Event of Default and the Bankruptcy Court determines that an Event of Default has not occurred prior to the expiration of five (5) business days after the Required Notice.

      If an Event of Default remains outstanding and uncured after March 12, 2015, Lender may elect to require the Debtor to sell the Collateral to Lender or its nominee free and clear of all liens, claims, and interests pursuant to Section 363 of the Bankruptcy Code through the Backup Transaction, described above.

<u>Indemnification</u>:  The Debtor hereby indemnifies and holds harmless, the Lender, and each of its affiliates and each of their respective officers, directors, employees, agents, advisors, attorneys, and representatives for any liability in connection with the Final Order, Term Sheet, and the DIP Credit Facility, except for gross negligence and willful misconduct.

<u>Governing Law</u>:  Arizona.

5301180_10

Case 2:14-bk-17914-EPB Doc 165-1 Filed 01/29/15 Entered 01/30/15 10:29:36
Desc Exhibit A Page 16 of 18

Effective Date: This Term Sheet shall not become effective until entry of a Final Order, which shall be in form and substance agreed to by counsel for Lender.

Defined Terms: Capitalized terms not defined above are defined in the Final Order. Capitalized terms not defined in the Final Order are defined as follows:

Auction shall have the meaning set forth in the Bidding Procedures Order.

Bankruptcy Case shall mean the case of the Company under Chapter 11 of the Bankruptcy Code, in the United States Bankruptcy Court for the District of Arizona, case number 2:14-BK-17914-EPB.

Bankruptcy Code shall mean the United States Bankruptcy Code, being Title 11 of the United States Code as enacted in 1978, as the same has heretofore been or may hereafter be amended, recodified, modified, or supplemented, together with all rules, regulations and interpretations thereunder or related thereto.

Bankruptcy Court shall mean the United States Bankruptcy Court for the District of Arizona.

Bidding Procedures shall have the meaning set forth in the Bidding Procedures Order.

Bidding Procedures Order shall mean the Order entered by the Bankruptcy Court on January 9, 2015, (I) Approving Bid Procedures Relating to Sale of the Debtor's Assets, Including Bid Protections; (II) Scheduling a Hearing to Consider the Sale; (III) Approving the Form and Manner of Notice of Sale by Auction; (IV) Establishing Procedures for Noticing and Determining Cure Amounts; and (V) Granting Related Relief [Doc. No. 138].

Business Day shall mean any day on which banks in the State of Arizona are open for business.

Committee shall mean the Official Committee of Unsecured Creditors for the Bankruptcy Case.

Prevailing Bid shall have the meaning set forth in the Bidding Procedures Order.

Qualified Bid shall have the meaning set forth in the Bidding Procedures Order.

Sale Order shall have the meaning set forth in the Bidding Procedures Order.

Further, to the extent there are inconsistencies between the Final Order and the Term Sheet, the terms and conditions of the Final Order shall control.

**IN WITNESS WHEREOF,** the parties hereto have caused this Term Sheet to be effective, executed, accepted and delivered by their proper and duly authorized officers as of the date set forth above.

**SNTECH, INC.**

_____
**By:** _____
**Title:** _____

**MUNICIPAL EMPLOYEES RETIREMENT SYSTEM OF LOUISIANA**

_____
**By:** _____
**Title:** _____