LEWIS ROCA ROTHGERBER LLP
SUSAN M. FREEMAN
Arizona Bar No. (004199)
201 E. Washington Street, Suite 1200
Phoenix, Arizona 85004
Telephone: (602) 262-5756
Facsimile: (602) 734-3824
Email: SFreeman@LRRLaw.com

*Attorneys for Regal Beloit Corporation*

# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In Re:<br><br>SNTECH, INC.<br><br>Debtor | Case No.: 2:14-BK-17914-EPB<br><br>Chapter 11  [**REDACTED**] |

## LIMITED OBJECTION OF REGAL BELOIT CORPORATION TO POTENTIAL ASSUMPTION OF EXECUTORY CONTRACTS AND ANY INCONSISTENT SALE ORDER PROVISIONS

Regal Beloit Corporation ("Regal Beloit"), by and through its undersigned counsel, hereby objects to the Motion for Entry of Order, *inter alia*, Authorizing the Assumption, Sale, and Assignment of Certain Executory Contracts (ECF No. 62) (the "Sale Motion") and the Notice of Potential Assumption of Executory Contracts and Unexpired Leases (ECF No. 222) (the "Assumption Notice") filed by SNTech, Inc. ("Debtor"). For the following reasons, Regal Beloit objects to any assumption or assignment of the Assignment and License Agreement between Regal Beloit and Debtor that purports to grant Debtor or the assignee additional rights not granted under the License Agreement, and to any Purchase Agreement or Sale Order provisions purporting to grant such additional rights.

# BACKGROUND

**Regal Beloit's Stipulated Divestiture Order**

Regal Beloit manufactures a wide range of electric motors, drives and controls, and power transmission equipment. In 2010, Regal Beloit acquired the electric motor business of A.O. Smith Corporation. As a condition of that transaction, and as part of a settlement with the United States Department of Justice Antitrust Division ("USDOJ"), Regal Beloit divested its pool and spa pump motor business to Debtor. That was the only part of Regal Beloit's business that was considered by the USDOJ to be anticompetitive in connection with the acquisition of the A.O. Smith business. Regal Beloit's settlement with the Antitrust Division was memorialized in a Final Judgment entered by the United States District Court for the District of Columbia in *United States v. Regal Beloit Corp.*, Case No. 1:11-cv-01487 (the "Final Judgment"). A copy of the Final Judgment is attached hereto as **Exhibit A**.

The Final Judgment concerned in relevant part "Divested RBC Product Lines," defined as certain motors "for use in pool pump and/or spa pump applications." Ex. A § II(G).[1] Regal Beloit was obliged to divest "Pump Motor Divestiture Assets" to an "Acquirer of the Pump Motor Divesture Assets" defined as SNTech. Ex. A. §§ II(C), (E); IV(A).

The definition of Pump Motor Divesture Assets encompassed three categories; Regal Beloit transferred all of its interests in the first two: (1) tangible assets used to create, sell and service the Divested RBC Product Lines; and (2) intangible assets used

---

[1] There are also provisions regarding a "Divested AOS Product Line" concerning "draft inducers," a line of products manufactured by A.O. Smith inapplicable to the Debtor's sale.

2

Case 2:14-bk-17914-EPB    Doc 237    Filed 03/04/15    Entered 03/04/15 21:04:05    Desc
Main Document    Page 2 of 12

4837-3198-2882.4

exclusively or primarily for that purpose. Ex. A.§ II(I)(1), (2)  But with respect to category (3), "intangible assets used to design, develop, manufacture, market, service, distribute, and/or sell *any of the Divested RBC Product Lines* not included in paragraph II(I)(2) . . . ," Regal Beloit did not transfer all of its interests; rather, it was required to grant "a non-exclusive, perpetual, worldwide, non-transferrable, royalty-free license for such intangible assets *to be used for the design, development, manufacture, marketing, servicing, distribution, and/or sale of any of the Divested RBC Product Lines . . . .*" Ex. A § II(I)(3).

**The Assignment and License Agreement at Issue**

As contemplated by the Final Judgment, Regal Beloit and Debtor entered into a series of agreements related to the divestiture of the pool and spa motor business, one of which was the Assignment and License Agreement (the "<u>License Agreement</u>") that Debtor now seeks to assume and assign to the purchaser of its assets.  The USDOJ was an active participant in the License Agreement preparation, and reviewed and accepted the final document.  A copy of the License Agreement is attached hereto as **Exhibit B.**

The License Agreement involves the same three categories of assets addressed in the Final Judgment, all of which were for use in ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. B § 1.1; *see also* Ex. B § 1.2, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Pursuant to the License Agreement, Regal Beloit assigned ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1   ▇ Ex. B §§ 3.1.1, 3.2.1. ▇

2   ▇

3

4   ▇

5   ▇ Ex. B § 3.2.4.

6   Consistent with the Final Judgment, Regal Beloit ▇

7   ▇ Ex. B § 3.3 and Schedule C.  The License

8   Agreement made explicitly clear:

9

10   ▇

11

12   Ex. B § 3.3.4 (emphasis added).  The intellectual property addressed in section 3.3 and

13   listed on Schedule C of the License Agreement (the "<u>Licensed IP</u>") is the subject of this

14   Limited Objection.

15   **Debtor's Sale Motion and Proposed Sale Order Violate the License Restrictions**

16   On January 12, 2015, Debtor filed the Sale Motion, seeking to sell substantially all

17   of its assets and to, potentially, assume and assign certain executory contracts.  Debtor

18

19   conducted an auction of its assets on February 25, 2015, and the continued hearing on

20   Debtor's motion to approve the sale of its assets is scheduled for March 5, 2015.  On

21   February 26, 2015, Debtor filed the Assumption Notice seeking to assume the License

22

23   Agreement and another executory contract with Regal Beloit and assign those contracts

24   to the Prevailing Bidder, as defined in the Sale Motion.  In the Assumption Notice,

25   Debtor stated "the assumption and assignment of the patents and other intellectual

26

27   property rights are being assumed and assigned to the Prevailing Bidder *without any use*

28

4

Case 2:14-bk-17914-EPB    Doc 237    Filed 03/04/15    Entered 03/04/15 21:04:05    Desc
4837-3198-2882.4                    Main Document    Page 4 of 12

*restrictions, as to be more fully set forth in the Sale Order.*" (ECF No. 222 at 5 n.2.) (emphasis added).

Debtor has not yet provided Regal Beloit with a copy of any Purchase Agreement, and there may well be objections to its terms. On the afternoon of March 4, 2015, though, Debtor provided Regal Beloit with a draft Sale Order. It provides, in part:

> S. The patents and other intellectual property rights acquired by Debtor pursuant to the *Final Judgment* entered by the United States District Court for the District of Columbia on November 1, 2011 in United States v. Regal Beloit Corp., case number 1:11-cv-01487-ESH (the "Final Judgment") do not have any use, application, or geographical restrictions enforceable against Debtor, except as expressly provided in the patents themselves. To the extent that any language in the Assignment and License Agreement between Debtor and Regal Beloit Corporation (the "RBC Assignment and License Agreement") may be interpreted as effectuating a use, application, or geographical restriction, such provision is not enforceable or effective as the Final Judgment does not authorize any such use, application, or geographical restriction and the Final Judgment controls.

If adopted as written, Paragraph 18 would also act to extinguish Regal Beloit's rights in the License Agreement being assigned, providing in part:

> For the avoidance of doubt and to make the RBC Assignment and License Agreement conform with the controlling terms and mandate of the Final Judgment, the licenses of the patents and other intellectual property identified on Schedule C of the RBC Assignment and License Agreement that are being assumed by Debtor and assigned to the Prevailing Bidder: (i) may be used by the Prevailing Bidder nationally and internationally and shall have no geographic use restrictions for the Prevailing Bidder; and (ii) may be utilized by the Prevailing Bidder for any use or application authorized by the patents themselves. To the extent the terms of the RBC Assignment and License Agreement are inconsistent with the Final Judgment, the terms of the Final Judgment and this Order shall control and the RBC Assignment and License Agreement is hereby amended and modified.

Paragraph 19 provides that each counterparty to an executory contract has consented or is deemed to have consented to the assumption and assignment on these terms. That is inaccurate. Regal Beloit does NOT consent.

**OBJECTION**

Regal Beloit objects to Debtor's assumption and assignment of the License Agreement to the extent that Debtor seeks to expand the licenses granted under the License Agreement, including with respect to authorizing use of the Licensed IP for motors outside the scope of the Divested Product Lines. Regal Beloit does not otherwise object to the assignment of the License Agreement to the buyer of Debtor's assets.

Regal Beloit was required by the Final Judgment to divest its pool and spa motor business. It did so. Regal Beloit was not required to and did not divest itself of the right to use and control its intellectual property that was not exclusively or primarily utilized in the pool and spa business. It retained the right to control that property and licensed certain patents to Debtor only "for use in pool pump and/or spa pump applications." That use restriction was a critical component of the License Agreement, setting forth the essential intent of the divestiture – transferring Regal Beloit's pool and spa motor business, and only that part of its business.

Regal Beloit manufactures and sells motors for fans, compressors, garage door openers, and many other uses. It reserved for itself and never assigned the right to use the Licensed IP for motors outside the scope of the Divested Product Lines. It never gaveDebtor (or its assignees) the right to compete with Regal Beloit using Regal Beloit's patents for non-pool and non-spa motors. Regal Beloit owns those intellectual property

rights, has not transferred them, and will be obliged to sue for enforcement or risk impairment if others use these IP rights outside the scope of Debtor's license.

**<u>The License Agreement Can Only Be Assumed and Assigned Without Modification</u>**

Section 365 of the Bankruptcy Code permits Debtor to, with the Court's permission, assume and assign executory contracts, including the License Agreement.[2] 11 U.S.C. § 365. Debtor's assumption and assignment of any executory contracts must be complete; a debtor cannot choose which provisions of an agreement to assume. *See, e.g, NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 531 (1984) (Should the debtor-in-possession elect to assume the executory contract, however, it assumes the contract *cum onere* . . . ."). Nor can Debtor modify or alter any provisions of an assumed executory contract. *In re Fleming Cos.*, No. 03-10945, 2004 Bankr. LEXIS 198 at *7 (Bankr. D. Del. Feb. 27, 2004) ("Section 365 provides that a debtor's assumption and assignment cannot modify an agreement's express terms . . . .").

Here, Debtor seeks to assume License Agreement and assign it to the Prevailing Bidder pursuant to § 365. However, the Assumption Notice indicates that the "patents and other intellectual property rights" acquired by Debtor in the License Agreement are to be assigned to the Prevailing Bidder "without any use restrictions." (ECF No. 222 at 5 n.2.) Debtor's interpretation of the scope of the License Agreement is not accurate.

---

[2] The License Agreement is executory, even though neither party has any payment obligations under the agreement, because the licensee owes continuing performance obligations and the licensor must continue to refrain from suing the licensee for infringement. *See Everex Sys. v. Cadtrak Corp. (In re CFLC)*, 89 F.3d 673, 677 (9th Cir. 1996). Consent of the licensor is generally required for the assignment of a non-exclusive patent license, *see Perlman v. Catapult Entertainment (In re Catapult Entertainment)*, 165 F.3d 747, 750 (9th Cir. 1999), but the License Agreement contemplates that Debtor may assign its rights under the agreement to any future purchaser of substantially all of the assets Debtor acquired from Regal Beloit.

7
Case 2:14-bk-17914-EPB    Doc 237    Filed 03/04/15    Entered 03/04/15 21:04:05    Desc
4837-3198-2882.4                      Main Document         Page 7 of 12

Under the plain terms of the License Agreement, the Licensed IP is subject to important use restrictions. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ (Ex. B at § 3.3.4.) That express limitation is contrary to Debtor's statement that all the rights Debtor acquired under the License Agreement are "without any use restrictions." ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ *See Everex*, 89 F.3d at 677 (a non-exclusive patent license is, in essence, a "waiver of the right to sue the licensee for infringement") (internal quotation omitted).

Regal Beloit objects to Debtor's assumption or assignment of the License Agreement to the extent Debtor or the Prevailing Bidder seek to modify the provisions of the License Agreement, as is apparent from the proposed Sale Order. Regal Beloit does not consent to any modification or alteration of the use restrictions on the licenses granted in License Agreement. Such changes clearly and obviously violate the express terms and the intent of the License Agreement and the Final Judgment.

Debtor must assume and assign the License Agreement in full and without alteration, for Debtor cannot assume or assign a license broader than that granted in the License Agreement. Debtor and the Prevailing Bidder must comply with the use restrictions in the License Agreement and use the Licensed IP solely for the Divested Product Lines. The Prevailing Bidder cannot provide adequate assurance of future performance of the License Agreement if it considers itself free to use the Licensed IP for anything other than pool pump motors and spa pump motors.

**The License Agreement Cannot Be Sold Free and Clear of Regal Beloit's Interests**

Executory contracts are estate assets that may be sold in a Section 363 sale only after Section 365 requirements are met for assumption. *See In re Qintex Entm't, Inc.*, 950 F.2d 1492, 1495 (9th Cir. 1991). Hence, the obligation to assume Regal Beloit's contracts *cum onere* before attempting to sell them.

Section 363(f) does not permit Debtor to transfer its interest in the License Agreement free and clear of Regal Beloit's right to enforce the restrictions on the licenses granted to Debtor. The only property interest in the licenses granted under the Regal Beloit License Agreement that Debtor has to sell is limited by the restriction to use only for ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. Debtor cannot sell what it does not own. *See, e.g.*, *Gorka v. Joseph (In re Atl. Gulf Cmtys. Corp.)*, 326 B.R. 294, 301 (Bankr. D. Del. 2005) ("[U]nder bankruptcy law, the Trustee cannot convey what the estate does not own.").

Accordingly, proposed Sale Order paragraphs L, M, N, P, Q, 3, 4, 5, 6, 9, 10, 13, 14, 15, 16, 23, 27, 31 and especially S and 18 violate the Bankruptcy Code and Regal Beloit's rights insofar as they purport to strip Regal Beloit of its exclusive right to use the Licensed IP for any purpose other than pool pump and spa pump use.

**This Court Cannot "Clarify"-Away the License Agreement Use Restrictions or Alter Them Through an Order**

Regal Beloit also objects to the inclusion of any language in the Sale Order that purports to "clarify" the terms of the License Agreement. The License Agreement speaks for itself, and the Bankruptcy Code does not permit the Court to re-write or modify the

9

Case 2:14-bk-17914-EPB   Doc 237   Filed 03/04/15   Entered 03/04/15 21:04:05   Desc
4837-3198-2882.4                    Main Document    Page 9 of 12

terms of the License Agreement in connection with the sale of Debtor's assets through judicial "clarification."

Nor may the Court re-write the License Agreement by referring to the Final Judgment. The Assumption Notice makes reference to the Final Judgment, as if the Final Judgment, and not the License Agreement, is controlling. Debtor is not a party to the Final Judgment, nor can Debtor seek to enforce the terms of the Final Judgment.[3] The Final Judgment obliged Regal Beloit to transfer specific assets, and it did so pursuant to the License Agreement and other documents. The terms of the License Agreement control here, and Debtor is bound by each and every one of the restrictions in the License Agreement.

## **CONCLUSION**

WHEREFORE, Regal Beloit respectfully requests that, in the event the Court permits Debtor to assume and assign the License Agreement, the Court's authorization order provides that the assignee is bound by all of the terms of the License Agreement, including use restrictions. The proposed Sale Order must be modified.

---

[3] Even if Debtor could enforce the terms of the Final Judgment, the Final Judgment contemplates the same use restriction on the Licensed IP that is in the License Agreement, as set forth above. See Ex. A at 5, § II(I)(3) (providing for a non-exclusive license "to be used for the design, development, manufacture, marketing, servicing, distribution, and/or sale *of any of the Divested RBC Product Lines*" and that "such license" would be transferrable to any future purchaser of substantially all of the Pump Motor Divestiture Assets) (emphasis added).

| | | |
|---|---|---|
| 1 | Date: March 4, 2015 | LEWIS ROCA ROTHGERBER LLP |
| 2 | | |
| 3 | | |
| 4 | | By: /s/ *Susan M. Freeman* <br> LEWIS ROCA ROTHGERBER LLP |
| 5 | | SUSAN M. FREEMAN <br> Arizona Bar No. (004199) |
| 6 | | 201 E. Washington Street, Suite 1200 <br> Phoenix, Arizona 85004 |
| 7 | | Telephone: (602) 262-5756 <br> Facsimile: (602) 734-3824 |
| 8 | | Email: SFreeman@LRRLaw.com mailto: |
| 9 | | *Attorneys for Regal Beloit Corporation* |

| | |
|---|---|
| 1 | I certify that on this 4th day of March, 2015, |
| 2 | I electronically served the attached redacted document to the parties listed through the CM/ECF System. |
| 3 | |
| 4 | I further certify that I electronically served an |
| 5 | unredacted document on this 4th day of March, 2015 on the following parties: |
| 6 | |
| 7 | Bradley J. Stevens<br>E-mail: bstevens@jsslaw.com |
| 8 | Todd B. Tuggle<br>ttuggle@jsslaw.com |
| 9 | Kami M. Hoskins |
| 10 | E-mail: khoskins@jsslaw.com<br>**JENNINGS, STRTOUSS & SALMON, P.L.C.** |
| 11 | *Counsel for the Official Committee of Unsecured Creditors* |
| 12 | |
| 13 | Thomas J. Salerno<br>E-mail: tsalerno@gordonsilver.com |
| 14 | Teresa M. Pilatowicz<br>E-mail: tpilatowicz@gordonsilver.com |
| 15 | Talitha Gray Kozlowski<br>E-mail: tgray@gordonsilver.com |
| 16 | **GORDON SILVER** |
| 17 | *Counsel for Debtor* |
| 18 | Tristan E. Manthey |
| 19 | E-mail: tmanthey@hellerdraper.com<br>Cherie Dessauer Nobles |
| 20 | E-mail: cnobles@hellerdraper.com<br>William H. Patrick, III |
| 21 | E-mail: wpatrick@hellerdraper.com |
| 22 | **HELLER DRAPER PATRICK HORN<br>& DABNEY LLC** |
| 23 | *Counsel for Debtor* |
| 24 | |
| 25 |   /s/   Marie H. Mancino<br>Lewis Roca Rothgerber LLP |
| 26 | |
| 27 | |
| 28 | |

4837-3198-2882.4